418 So.2d 1046 (1982)
GROVE ISLE, LTD., Appellant/Cross-Appellee,
v.
BAYSHORE HOMEOWNERS' ASSOCIATION, INC., et al. and State of Florida Department of Environmental Regulation, Appellees/Cross-Appellants.
BAYSHORE HOMEOWNERS' ASSOCIATION, et al., Appellants/Cross-Appellees,
v.
STATE of Florida, DEPARTMENT OF NATURAL RESOURCES and Grove Isle, Ltd., Appellees/Cross-Appellants.
Nos. AB-8, AC-373.
District Court of Appeal of Florida, First District.
July 16, 1982.
Rehearing Denied September 20, 1982.
*1047 Larry S. Stewart of Floyd, Pearson, Stewart, Richman, Greer & Weil, P.A., Miami, and Kenneth G. Oertel of Oertel & Laramore, P.A., Tallahassee, for appellant/cross-appellee Grove Isle, Ltd.
Douglas M. Halsey of Paul & Thomson and David A. Doheny, Miami, for appellant/cross-appellee Bayshore Homeowners, et al.
Deborah A. Getzoff, Tampa, for appellee Dept. of Natural Resources.
Alfred W. Clark, Alfred J. Malefatto, and Randall E. Denker, Tallahassee, for appellee Dept. of Environmental Regulation.
MILLS, Judge.
These cases are consolidated appeals and cross appeals from final orders of the Department of Natural Resources (DNR) and the Department of Environmental Regulation (DER) concerning construction of a proposed marina adjacent to Grove Isle in Biscayne Bay.
Grove Isle, Ltd. seeks to construct a marina adjacent to its condominium project on Grove Isle. Bayshore Homeowner's Association and others are individuals and special interest groups who reside in the residential area across from Grove Isle on the mainland and who use the proposed marina site for recreational activities. They, of course, oppose construction of the marina, arguing that it will interfere with their enjoyment of the area and pollute that part of Biscayne Bay.
The proposed marina will contain 90 boat slips and be constructed on approximately five and one-half acres of State submerged lands. The slips will be available only to Grove Isle condominium owners.

DNR APPEAL
On 27 March 1979, Grove Isle, the developer of the marina project, filed an application with DNR for a lease of sovereignty submerged lands. DNR informed Grove Isle that no lease was required. Under DNR's interpretation of its rules, the marina would be a private dock used exclusively by condominium owners which produced no direct income.
Bayshore and the other petitioners administratively challenged this determination. Grove Isle was permitted to intervene as a respondent and moved to dismiss the petitions for lack of standing. DNR joined the motions to dismiss. The hearing officer held that the petitioners lacked standing. He also held that no lease was required because since 1978 DNR had interpreted its rules so as not to require leases under the circumstances of this case.
The finding of no standing was premised on the conclusion that the petitioners had no substantial interest in the proceedings and that DNR had taken no action and would take no action which affected the substantial interest of any party.
The Governor and Cabinet, sitting as the Board of Trustees of the Internal Improvement Trust Fund (Trustees), adopted the hearing officer's conclusions of law that no lease of sovereignty submerged lands was required but rejected his conclusion of law regarding standing. The Trustees held the petitioners demonstrated standing and must be allowed a point of entry in the proceedings. Bayshore and others appeal the decision regarding the lease, and Grove Isle cross appeal the standing decision.
We affirm the appeal, reverse the cross appeal, and hold that the petitioners lack standing to challenge DNR's decision that no lease was required. Petitioners have failed to show how their "substantial interests" will be "affected" by the DNR's decision that no lease is required. They, therefore, were not entitled to initiate Section 120.57 proceedings. Section 120.52(10); Section 120.57, Florida Statutes (1979). Their petitions for administrative hearing allege that they will be adversely affected by the adverse consequences to Biscayne Bay which will be caused by construction of the marina. These allegations do not show how petitioners are "substantially affected" any more than the general public by DNR's decision not to require a lease for the marina. See U.S. Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla. 1974); Chabau v. *1048 Dade County, 385 So.2d 129 (Fla. 3d DCA 1980).
DNR's decision merely holds that no lease is required for the proposed marina. It in no way concerns the permit requirements for construction of the marina. This case is analagous to Peterson v. Florida Department of Community Affairs, 386 So.2d 879 (Fla. 1st DCA 1980), and Suwannee Area Council, etc. v. State, 384 So.2d 1369 (Fla. 1st DCA 1980). In those cases, we held that third parties had no standing to challenge a decision by the Department of Community Affairs as to whether a proposed construction project was a development of regional impact (DRI).
As noted in Peterson, a determination of whether a project is a DRI does not insulate the developer from jurisdictional or permitting requirements of other federal, state, or local agencies. Likewise, a decision by DNR that no lease is required for Grove Isle's proposed marina does not insulate the developer from the permitting requirements governing construction of the marina. Because the petitioners have failed to demonstrate how they are substantially affected any more than the general public by DNR's decision not to require Grove Isle to pay rent for the submerged land in question, we reverse that portion of the Trustee's final order granting petitioners standing and dismiss Bayshore's appeal.

DER APPEAL
On 13 March 1978, Grove Isle applied to DER for a permit to construct the marina. The permit was "deactivated" from 27 September 1978 until 30 March 1979, so that Grove Isle could comply with other various governmental agencies regarding construction of the marina. Grove Isle's permit was deemed complete by DER on 3 August 1979. DER issued an "intent to issue permit" on 23 October 1979. Bayshore and others filed for an administrative hearing on whether the permit should issue.
The initial hearing was held in January 1980. The hearing officer issued a recommended order that the permit be issued. Bayshore and the other petitioners, except for Mr. Doheny and Mr. Filer, were found to lack standing. The hearing officer's finding was based on a lack of evidence in the record upon which a legal conclusion regarding the remaining petitioners' standing could be made.
This hearing was conducted using Rule 17-4.29, Florida Administrative Code, as the applicable water quality standard. In its final order, DER accepted the hearing officer's findings of fact and conclusions of law except for the conclusion of law regarding the applicable water quality rule and public interest criteria. DER denied the permit because the hearing had been conducted under the wrong water quality standard. DER asserted the appropriate standard was Rule 17-4.242, Florida Administrative Code, Florida Outstanding Water Rule, which applied to permit applications completed after 1 March 1979. Biscayne Bay is among those bodies of water designated as Outstanding Florida Waters. Rule 17-3.041(1)(f), Florida Administrative Code. After denying the permit, DER remanded for a new hearing for the taking of additional evidence of whether the proposed marina complied with Rule 17-4.242.
Upon remand the hearing officer recommended that the permit be denied because although ambient water quality surrounding the marina would not be lowered, Grove Isle failed to carry its burden of showing the marina was clearly in the public interest as required by the rule.
In its final order under the new water quality standard, DER accepted the hearing officer's conclusion of law that Grove Isle did not show the marina was "clearly in the public interest." However, DER rejected the conclusion that ambient water quality would not be lowered.
DER held that unless a "restricted mixing zone" was applied for pursuant to Rule 17-4.242(1)(a)2.b, Florida Administrative Code, ambient water quality was to be measured within the project site, not in the small cove in which the marina was located as done by the hearing officer. DER found the hearing officer applied de facto mixing zone criteria erroneously.
*1049 DER denied issuance of the permit since the project was not "clearly in the public interest" and it was uncertain whether ambient water quality would be lowered.
Grove Isle appeals the denial of the permit and Bayshore, et al. cross appeal the decision on standing. We affirm the appeal and cross appeal.
There is no merit to Grove Isle's first argument that it is entitled to a permit by default because DER failed to timely act on its application. DER complied with the applicable time frames in the statutes and rules.
Because Biscayne Bay is one of Florida's Outstanding Waters, a permit applicant must show that its proposed project will not lower ambient water quality and that the project is clearly in the public interest. Rule 17-4.242, Florida Administrative Code, states:
(a) No Department permit or water quality certification shall be issued for any stationary installation which significantly degrades, ... or is within Outstanding Florida Waters, unless the applicant affirmatively demonstrates that:
... .
2. The proposed activity or discharge is clearly in the public interest; and either,
... .
b. The existing ambient water quality within Outstanding Florida Waters will not be lowered ...
Grove Isle, therefore, had two burdens to overcome before it was entitled to the permit. The hearing officer held that ambient water quality would not be lowered; DER rejected this conclusion. We hold DER erred in doing so. DER offered no expert testimony or evidence, other than conclusory allegations, that ambient water quality must be measured within the project site rather than within the reasonably contiguous area used by the hearing officer. Absent such record foundation, DER is not free to substitute its conclusions for those of the hearing officer. Anheuser Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981). Because DER's conclusion regarding the location of ambient water quality measurement was based upon nonrule policy which was susceptible of verification by evidence in the proceedings before the hearing officer, but which was not proved by DER, the conclusion is vacated. Anheuser Busch, supra.
We affirm, however, the conclusion of the hearing officer, adopted by DER, that Grove Isle failed to carry its burden of showing the project was clearly in the public interest. This conclusion is supported by competent substantial evidence in the record and we will not substitute our judgment for that of the hearing officer.
Grove Isle's argument that DER should be estopped from applying the new, more stringent water quality rule is without merit. Department of Environmental Regulation v. Oyster Bay Estates, 384 So.2d 891 (Fla. 1st DCA 1980).
We hold there was no error in the conclusion regarding Bayshore's lack of standing. The ruling was the result of a lack of evidence in the record upon which the hearing officer could base a conclusion regarding standing. This conclusion was supported by the record and properly adopted by DER.
We reverse DNR's decision that Bayshore had standing to challenge the determination that no lease was required and we affirm DER's denial of a construction permit to Grove Isle.
ROBERT P. SMITH, Jr., C.J., and DOWNEY, JAMES C., Associate Judge, concur.