442 So.2d 966 (1983)
David A. DOHENY, Appellant,
v.
GROVE ISLE, LTD., and State of Florida Department of Environmental Regulation, Appellees.
No. AM-475.
District Court of Appeal of Florida, First District.
October 4, 1983.
On Rehearing December 8, 1983.
*968 Parker D. Thomson, Richard J. Ovelmen and Douglas M. Halsey of Paul & Thomson, Miami, David A. Doheny, in pro. per., for appellant.
Kenneth G. Oertel of Oertel & Laramore, P.A., Tallahassee, Larry Stewart of Floyd, Pearson, Stewart, Richman, Greer & Weil, Miami, for appellee Grove Isle.
Alfred J. Malefatto, Asst. Gen. Counsel, for Fla. Dept. of Environmental Regulation, Tallahassee, for appellee DER.
Robert M. Rhodes and Patrick K. Wiggins of Messer, Rhodes & Vickers, Tallahassee, for appellees.
MILLS, Judge.
Doheny appeals from a 29 March 1982 order of the Department of Environmental Regulation (DER) directing that a default permit be issued to Grove Isle for construction of a 90-slip boat marina in Biscayne Bay adjacent to Grove Isle's condominium project. The default resulted from DER's alleged failure to approve or deny, within the time prescribed by law, Grove Isle's second application to construct the marina.
This Court previously considered an appeal by Grove Isle affirming an order of DER denying Grove Isle's first application for a permit to construct the same marina at the same location, in Grove Isle v. Bayshore Homeowner's Ass'n., 418 So.2d 1046 (Fla. 1st DCA 1982), petition for review denied in 430 So.2d 451 (Fla. 1982).
In our opinion in Grove Isle, supra, we said:
The initial hearing was held in January 1980. The hearing officer issued a recommended order that the permit be issued. Bayshore and the other petitioners, except for Mr. Doheny and Mr. Filer, were found to lack standing. The hearing officer's finding was based on a lack of evidence in the record upon which a legal conclusion regarding the remaining petitioner's standing could be made.
This hearing was conducted using Rule 17-4.29, Florida Administrative Code, as the applicable water quality standard. In its final order, DER accepted the hearing officer's findings of fact and conclusions of law regarding the applicable water quality rule and public interest criteria. DER denied the permit because the hearing had been conducted under the wrong water quality standard. DER asserted the appropriate standard was Rule 17-4.242, Florida Administrative Code, Florida Outstanding Water Rule, which applied to permit applications completed after 1 March 1979. Biscayne Bay is among those bodies of water designated *969 as Outstanding Florida Waters. Rule 17-3.041(1)(f), Florida Administrative Code. After denying the permit, DER remanded for a new hearing for the taking of additional evidence of whether the proposed marina complied with Rule 17-4.242.
Upon remand the hearing officer recommended that the permit be denied because although ambient water quality surrounding the marina would not be lowered, Grove Isle failed to carry its burden of showing the marina was clearly in the public interest as required by the rule.
In its final order under the new water quality standard, DER accepted the hearing officer's conclusion of law that Grove Isle did not show the marina was "clearly in the public interest." However, DER rejected the conclusion that ambient water quality would not be lowered.
DER held that unless a "restricted mixing zone" was applied for pursuant to Rule 17-4.242(1)(a)2.b, Florida Administrative Code, ambient water quality was to be measured within the project site, not in the small cove in which the marina was located as done by the hearing officer. DER found the hearing officer applied de facto mixing zone criteria erroneously.
DER denied issuance of the permit since the project was not "clearly in the public interest" and it was uncertain whether ambient water quality would be lowered.
418 So.2d at 1048, 1049. This Court further observed in that opinion that under Rule 17-4.242, Florida Administrative Code, Grove Isle was required to show: (1) that the proposed project would not lower ambient water quality; and (2) that the project is clearly in the public interest. While this Court held that DER erred in rejecting the hearing officer's conclusion that ambient water quality would not be lowered, we affirmed DER's adoption of the hearing officer's finding that Grove Isle failed to carry its burden of showing that the project was clearly in the public interest and, therefore, affirmed DER's denial of the application for the construction permit.
Prior to this Court's opinion and order in the first appeal, Grove Isle filed another application with DER on 18 May 1981 for a permit for the construction of the marina. The abbreviated "reapplication" took the form of a letter to DER from counsel for Grove Isle enclosing certain documents regarding the original application. Basically, the reapplication differed from the first application in that it requested DER to grant a mixing zone for its project pursuant to Rule 17-4.244, Florida Administrative Code, and submitted, along with its letter, a map of a proposed mixing zone. The reapplication recited that although Grove Isle disagreed that a mixing zone was necessary, it was reapplying for the permit and also applying for a mixing zone "in an attempt to keep this matter from becoming any more complicated." On 19 June 1981, DER staff responded by sending to Grove Isle a "completeness summary" indicating that the project would be in Outstanding Florida Waters and requesting Grove Isle "to demonstrate that this project is clearly in the public interest and that this project will not result in the degradation of ambient water quality beyond the 30-day construction period...." In response, counsel for Grove Isle sent a letter to DER on 25 June 1981. The letter suggested that DER refer to its file in connection with the prior application for the information sought in the completeness summary letter.

LACK OF JURISDICTION
The Department did not have jurisdiction to consider Grove Isle's second application.
This Court acquired jurisdiction of this case by virtue of Grove Isle's appeal of the Department's adverse ruling on its first application. Grove Isle, supra. The Court did not divest itself of jurisdiction after acquiring jurisdiction. The issues raised by the second application were ruled upon by this Court in Grove Isle, supra.

*970 ESTOPPEL BY JUDGMENT
Grove Isle was estopped from filing its second application by this Court's decision on its first application. Grove Isle, supra.
The Department ruled against Grove Isle on both issues raised by its first application, water quality and public interest. The Department also denied the permit it sought.
On appeal, this Court affirmed the public interest issue and permit denial but reversed the water quality issue. Although Doheny and DER won the public interest issue and the case, Grove Isle won the water quality issue.
In both applications, Grove Isle sought a permit from DER to build a marina. In both cases, the issues were water quality and public interest. In both cases, Grove Isle sought and Doheny opposed the permit. DER opposed the first permit and opposed the second permit until it concluded it had to issue the permit by default. DER was the permitting authority in both cases.
Grove Isle is estopped from arguing that the water quality would not be lowered because this Court ruled in its favor on this issue. Also, the Court has ruled in favor of Doheny and the Department on the public interest issue and denial of the permit. See Donahue v. Davis, 68 So.2d 163 (Fla. 1953).
This appeal is dismissed.
ERVIN, C.J., concurs.
NIMMONS, J., dissents with opinion.
NIMMONS, Judge, dissenting.
In this appeal, appellant Doheny complains of DER's final order directing the issuance of the default permit to Grove Isle upon Grove Isle's second application and seeks reversal of such order. The court's opinion finds that DER did not have jurisdiction to consider the second application and then proceeds to dismiss Doheny's appeal from DER's issuance of the default permit. The majority's disposition of this appeal, it seems to me, denies appellant Doheny the relief which the majority's rationale would suggest that to which he is entitled.
The majority opinion appears to hold, at least implicitly, that because of the pendency in this court of Grove Isle's appeal from the denial by DER of its first application, the subsequent administrative proceedings surrounding Grove Isle's second application constituted a nullity which therefore justifies disposition of the instant appeal by dismissal. The rationale for the majority's disposition is predicated upon the principle of estoppel by judgment.
Res judicata and estoppel by judgment are indeed available in administrative proceedings the same as in judicial proceedings. E.g. Metropolitan Dade County Board of County Commissioners v. Rockmatt Corporation, 231 So.2d 41 (Fla. 3rd DCA 1970). Both res judicata and estoppel by judgment are affirmative defenses which are properly pled as such in the lower tribunal. The majority's suggestion that DER somehow lacked jurisdiction to consider the second application is, I believe, erroneous. In fact, although res judicata and estoppel by judgment were raised in the lower proceedings by Doheny and DER and on appeal by Doheny, no one has raised any question regarding the jurisdiction of the agency to consider the second application, nor has anyone suggested that this appeal is subject to dismissal on the ground of lack of jurisdiction or otherwise.
For the reasons hereinafter expressed, I would reverse DER's final order awarding the default permit to Grove Isle and remand the case to DER for the purposes which will be explained. The balance of this opinion will consist of a summary of the holdings which I believe are justified in this case, a chronology of the facts additional to that which has been set forth in the opinion of the Court and then a discussion of the rationale for the disposition which I favor in this case.

SUMMARY OF HOLDINGS
I would hold: (1) that DER erred in its May 4, 1982, Final Order adopting the recommendation *971 of the hearing officer that a default permit be issued to Grove Isle in connection with its second application; (2) that DER's earlier order of September 24, 1981, denying Grove Isle's second application was violative of Rule 17-4.07(2), Florida Administrative Code, in that DER's June 19, 1981, letter requesting additional information did not serve to satisfy the requirement of that rule that the applicant be advised that DER deemed the application to be deficient such that DER intended to reject the application in the absence of correction of such deficiencies (DER's September 24, 1981, denial order was predicated upon the second application being the same as the first application since Grove Isle failed to supply the requested additional information); (3) that in view of DER's failure to furnish Grove Isle with the requisite notice under Rule 17-4.07(2), it would be premature for this court to hold, as a matter of law, that Grove Isle's second application was precluded by res judicata or estoppel by judgment  i.e. how can we say that Grove Isle would have failed or refused to furnish information, upon service of a proper Rule 17-4.07(2) notice, sufficient to render the second application different from the first; (4) that Doheny was not precluded from further contesting Grove Isle's second application upon the grounds that his intervention petition allegedly failed to conform with Rules 28-5.201(2) and 28-5.207, Florida Administrative Code; (5) that Doheny did not waive his right to be heard on the propriety of the issuance of the permit upon the alleged grounds that Doheny allegedly ignored his point of entry in the administrative proceedings.

ADDITIONAL CHRONOLOGY
As noted in the majority's opinion, Grove Isle's second application, which was filed while the appeal from the denial of the first application was pending in this Court, differed from the first application in that it requested DER to grant a mixing zone.[1] DER responded to that application by sending Grove Isle a "completeness summary" on June 19, 1981, requesting Grove Isle to show: (1) that the project was clearly in the public interest, and (2) that the project would not result in the degradation of ambient water quality beyond the 30-day construction period, such requirements being the criteria for projects located within "Outstanding Florida Waters."[2] Grove Isle's June 25, 1981, letter in response told DER to refer to its file in connection with the prior application.
Subsequently, appellant Doheny, who owned and resided in a home immediately across from the site of the proposed marina, who had participated in the first application proceedings as a person whose substantial interests would be affected, and who had also been a party to the first appeal in this Court, learned informally of the reapplication by Grove Isle and on July 24, 1981, wrote a letter to DER in opposition to it. On September 24, 1981, DER entered an order denying the reapplication stating:
This project was reviewed previously (DF 13-7956) and was determined not to be clearly in the public interest pursuant to Section 17-4.242, F.A.C. No further evidence, upon resubmittal, has been provided to clearly demonstrate that this project is in the public interest.
*972 On October 8, 1981, Grove Isle requested a formal hearing on the denial pursuant to Section 120.57(1), Florida Statutes. Shortly thereafter, DER referred the matter to a Department of Administrative Hearings (DOAH) officer for further proceedings. On November 16, 1981, the hearing officer, upon joint motion for continuance by Grove Isle and DER, continued the scheduled January 19, 1982, final hearing until February 23, 1982.
On January 21, 1982, Grove Isle moved for a "summary recommended order" on the grounds that over 90 days had passed between the date DER received Grove Isle's above-referred June 25, 1981, letter and the date that Grove Isle was informed of DER's denial of the permit. Grove Isle asserted that it was entitled to a "default permit" pursuant to Section 120.60(2), Florida Statutes, which provides in pertinent part:
Within 30 days after receipt of an application for a license, the agency shall examine the application, notify the applicant of any apparent errors or omissions, and request any additional information the agency is permitted by law to require... . Every application for license shall be approved or denied within 90 days after receipt of the original application or receipt of the timely requested additional information... . Any application for a license not approved or denied within the 90-day or shorter time period ... shall be deemed approved and, subject to the satisfactory completion of an examination, if required as a prerequisite to licensure, the license shall be issued.
Grove Isle took the position: (1) that its letter to DER of June 24, 1981, furnished the "timely requested information" which DER had sought by its completeness summary letter such that the 90 days within which the agency was required to approve or deny the reapplication commenced to run on June 25; and (2) that since DER's denial was on the 91st day thereafter, Grove Isle was entitled to a default permit under the statute.
Subsequent to the hearing on that motion, the hearing officer entered an order on February 1, 1982, directing Grove Isle to show cause why the permit should not be denied on the basis of res judicata and instructing DER to show cause why it should not be deemed to have waived the defense of res judicata. On February 5, Doheny petitioned to intervene, which petition the hearing officer granted on February 8 "because these proceedings concern the same project which was the subject of the [prior proceedings]," the hearing officer finding that "the allegations of Mr. Doheny's Petition to Intervene are well taken."
On February 8, 1982, counsel for DER filed his response to the order to show cause in which he opined that res judicata was not applicable to bar the reapplication, a position he later recanted when he filed in March his exceptions to the recommended order subsequently issued.
On February 12, 1982, the hearing officer submitted to DER and the parties a Section 120.57(1)(b)8, Florida Statutes, recommended order in which it was recommended that a default permit be issued to Grove Isle. The recommended order was issued four days after Doheny's petition to intervene was granted and before Doheny had an opportunity to file a response to the order to show cause. Subsequently, written exceptions were filed with the Secretary of DER by counsel for Doheny and by DER's counsel requesting that the Secretary reject the recommended order.
On March 29, 1982, the Secretary entered an order in which she found: (1) that although Grove Isle's letter in response to DER's completeness summary did not provide the additional information requested by DER, it was then incumbent upon the agency, by virtue of the provisions of Section 403.0876, Florida Statutes,[3] to request *973 from Grove Isle "information needed to clarify such additional information," and that the agency's failure to do so prevented it from claiming that the "90 day clock" of Section 120.60(2) was tolled; (2) that although DER was therefore precluded from thereafter actively opposing before the hearing officer Grove Isle's application, a default permit should nevertheless not be issued because of the intervention of Mr. Doheny as a party to the proceedings and that the agency's failure to comply with the Chapter 120 time clock should not be visited upon a person whose substantial interests would be affected and who was properly permitted to intervene as a party to the proceedings; (3) that res judicata was not applicable to bar Grove Isle's reapplication because, by virtue of the reapplication's request for a mixing zone, there was "no identity between the thing being sued for in the previous proceeding and the present action"; (4) that, however, unless Grove Isle could demonstrate in a hearing before the hearing officer that there had been some change in the project that would affect the previous adjudication that the project was not clearly in the public interest, the doctrine of estoppel by judgment would bar the relitigation of that point; and (5) that the case should, therefore, be remanded to the hearing officer for hearing to determine "whether, because of some change in the project or surrounding circumstances, the applicant can demonstrate that the proposed project is in the public interest" and whether the applicant is entitled to a mixing zone.
On April 16, 1982, the hearing officer entered an "Order Rejecting Remand" in which he declined to accept the Secretary's remand. The hearing officer concluded that Mr. Doheny's right to request a hearing was foreclosed by DER's default since "the Department, as representative of Mr. Doheny and all the other citizens of the State of Florida, let the time in which it could deny Grove Isle's application expire," and since the intervenor did not request a hearing on the Department's letter of intent to deny the permit within fourteen days of receipt of notice.
On May 4, 1982, the Secretary entered the Final Order appealed from in which she acceded to the hearing officer's rejection of the remand and ordered issuance of the permit to Grove Isle. The Secretary, however, excepted to most of the hearing officer's legal conclusions. The Secretary rejected the hearing officer's conclusion that DER is a representative of all the citizens of the State and that its actions bind all other parties. With respect to the hearing officer's conclusion that the intervenor failed to timely request a hearing, the Secretary observed: (1) that the hearing officer ignored the fact that the action (denial of the permit) was exactly what the intervenor wanted; (2) that the 14-day time period set forth in Florida Administrative Code Rule 17-1.62(1)(b) was not applicable to the intervenor in this case; and (3) the intervenor filed his petition within the time limits prescribed by Rule 28-5.207, Florida Administrative Code, which was granted by the hearing officer. Nevertheless, the Secretary accepted the hearing officer's conclusion that the permit should be issued for the reason that Doheny's petition for leave to intervene was not in conformance with Florida Administrative Code Rules 28-5.207 and 28-5.201(2) in that it was "devoid of any issue relating to Grove Isle's right to a water quality control permit." This appeal followed.

*974 ENTITLEMENT TO DEFAULT PERMIT
Under the circumstances of this case, the default permit should not have issued. Grove Isle's first application had been denied by DER on the grounds that Grove Isle had failed to show that the project was "clearly in the public interest." While Grove Isle's appeal was still pending in this Court on the denial of the first application, Grove Isle submitted its reapplication to DER. As previously noted above, the principal difference between the reapplication and the first application was that Grove Isle applied for a mixing zone in the latter. Given the fact that DER had ruled, with respect to the first application: (1) that Grove Isle had failed to carry its burden in demonstrating that the project was clearly in the public interest; and (2) that the public interest requirement was a separate criterion from the requirement regarding the project's effect on ambient water quality which rulings this Court subsequently affirmed on the first appeal, it was imminently reasonable that DER, upon receipt of the abbreviated reapplication, should request additional information from Grove Isle showing that the project was clearly in the public interest as required by Rule 17-4.242, Florida Administrative Code. Indeed, not to have done so would have amounted to a tacit erroneous assumption by DER that the submissions made by Grove Isle with respect to its first application were sufficient to carry its burden of demonstrating that the project was clearly in the public interest. Grove Isle asserts that its letter of June 25, 1981, which articulated no additional information but, instead, simply referred DER to unspecified records on file with DER regarding the first application, was a sufficient response to DER's request and thus triggered the start of the 90-day clock culminating in its entitlement to the default permit.
We should look to two statutes in order to determine whether Grove Isle was entitled to a default permit in this case. Part I of Chapter 403, Florida Statutes, is known as the "Florida Air and Water Pollution Control Act." Section 403.0876 thereof, which is set forth in footnote 3, supra, governs the processing of permit applications under that Act. Section 120.60(2) of the Administrative Procedures Act also governs the processing of licensing applications by an agency and further provides for the circumstances under which a "default permit" must be issued. These two statutes should be read in para materia. The question of whether DER violated the 90-day rule provided for in those statutes turns upon the question as to whether Grove Isle, in connection with its reapplication, furnished DER with the timely requested additional information showing that the proposed project was clearly in the public interest. For the reasons previously mentioned, I have no difficulty in rejecting Grove Isle's contention that its June 25, 1981, letter referring DER to its first application constituted the additional information requested by DER.
Grove Isle contends, alternatively, that DER was obligated to request clarification from Grove Isle of the "additional information" contained in its June 25 letter and that failure to make such request within thirty days from June 25 foreclosed DER from complaining about the incompleteness of the "additional information" contained in the June 25 letter. In support thereof, Grove Isle relies upon that portion of Section 403.0876 which provides:
Within 30 days after receipt of such additional information, the department shall review it and may request only that information needed to clarify such additional information... .
Grove Isle's reliance upon that provision is misplaced for the reason that its June 25 letter did not serve to supply DER with any additional information. Grove Isle's rather peremptory response was tantamount to a refusal to articulate the additional information which it would have to rely upon to demonstrate that the project was clearly in the public interest. Under both Sections 403.0876 and 120.60(2), the responsibility of providing timely requested information is on the applicant, not the agency. Under other circumstances, an applicant's *975 request that the agency refer to specific information already on file in connection with a prior proceeding may well serve as a sufficient response to the agency's request for additional information. Not so in a case such as this where it had previously been authoritatively determined that the information sought had not been previously submitted. It was, therefore, not incumbent upon DER to request that Grove Isle "clarify" its position.
Section 403.0876 also provides that where the applicant believes the request for additional information is not authorized by law or department rule, the department shall proceed to process the application at the request of the applicant, and that the 90-day period under these circumstances commences upon "the applicant's written request to begin processing the permit application." Grove Isle has never contended that the Department was not entitled to the additional information and, presumably, that is why Grove Isle did not attempt to rely upon that triggering provision of Section 403.0876.
Doheny presents the alternative argument, in which argument DER concurs, that even if DER were deemed to have violated the 90-day rule, DER's failure to comply with the statutory time limitations should not foreclose the right of a substantially affected person from further administratively contesting the application. I would not propose that we resolve that interesting question in view of my conclusion that the agency was not in violation of the 90-day rule.

DER'S SEPTEMBER 24, 1981, ORDER DENYING APPLICATION
Even though Grove Isle was not entitled to a default permit, it does not follow that DER was justified in entering its earlier September 24, 1981, "Final Order Denying Application for Permit" without first informing Grove Isle that it had found its application to be deficient, specifying such deficiencies and allowing time for corrections pursuant to Rule 17-4.07(2), Florida Administrative Code, which provides:
(2) When the application is found deficient in any respect, or required information has not been submitted to the Department, the application shall not be accepted. The Department shall notify the applicant of the deficiencies or lacking information and allow a reasonable time for corrections or submission of the necessary information.
DER's June 19, 1981, letter requesting additional information did not serve to satisfy the requirement of the above rule that the applicant be advised that the agency deemed the application to be deficient to the extent that DER intended to reject the application in the absence of correction of such deficiencies. Such construction of that rule is also consistent with the following provision of Section 120.60(2):
Failure to correct an error or omission or to supply additional information shall not be grounds for denial of the license unless the agency timely notified the applicant within this 30-day period.
In order to be entitled to deny the application for alleged deficiencies or omissions, I would construe both that section and the above Rule 17-4.07(2) to require not simply a request for additional information but a notification of deficiencies or omissions failure of which to correct would result in denial of the application.

RES JUDICATA OR COLLATERAL ESTOPPEL
Doheny asserts that Grove Isle's application may not be further considered by reason of the principle of estoppel by judgment. As previously noted, the doctrines of res judicata and estoppel by judgment are applicable in administrative proceedings. Metro Dade County Board of County Commissioners v. Rockmatt Corporation, supra; State of Florida, Department of Health and Rehabilitative Services v. Vernon, 379 So.2d 683 (Fla. 2nd DCA 1980); Clean Water, Inc. v. State Dept. of Env. Reg., 402 So.2d 456 (Fla. 1st DCA 1981); Coral Reef Nurseries, Inc. v. Babcock, 410 So.2d 648 (Fla. 3rd DCA 1982). Inasmuch as this Court affirmed *976 the denial of Grove Isle's first application on the grounds of the applicant's failure to show that the proposal was clearly in the public interest and since it was determined that the first application was properly denied even though the applicant satisfied the other criterion regarding ambient water quality, it would appear that the reapplication should be denied unless the applicant could demonstrate some change or modification which would show that the project was clearly in the public interest. However, under the circumstances of this case, I would not determine this appeal on the basis of the applicability of either res judicata or estoppel by judgment. Since, for the reasons enunciated above, the order of the Secretary awarding the default permit to Grove Isle should be set aside and DER's previous order of September 24, 1981, should also be set aside, I am of the view that it would be premature for us to hold that Grove Isle's second application is barred by either doctrine. Whether Grove Isle, after a Rule 17-4.07(2) notification by DER as contemplated above, would be able to remedy the existing deficiency in its present application remains to be seen. New facts, changed conditions or additional submissions by the applicant may materially affect the ultimate applicability of res judicata or estoppel by judgment. See Coral Reef Nurseries, Inc. v. Babcock Co., supra at 654.

SUFFICIENCY OF INTERVENTION PETITION
I would next address the ruling contained in DER's final order which ruling precludes Doheny's right to further contest the issuance of the permit upon the grounds that his intervention petition purportedly failed to conform with the requirements of Rules 28-5.201(2) and 28-5.207, Florida Administrative Code. Those rules set forth the requirements for the content of such petitions. DER was not justified in summarily foreclosing in such a manner Doheny's right to further contest the permit application. As mentioned earlier in this opinion, the hearing officer had previously granted the petition to intervene noting that "these proceedings concern the same project which was the subject [of the prior proceeding]" in which Doheny was a party and that "the allegations of Mr. Doheny's Petition to Intervene are well taken." Further, no objection was made by either DER or Grove Isle before or after the order granting the intervention. Indeed, both the hearing officer and DER in its final order appealed from have acknowledged the fact that Doheny was a substantially affected person. Under these circumstances, even if the previously granted intervention petition were somehow later determined to be deficient, Doheny should have been offered the opportunity to correct the deficiency by amendment.

POINT OF ENTRY
Finally, Grove Isle argues that Doheny waived his right to be heard on the propriety of the issuance of the default permit because he allegedly ignored his "point of entry" in the administrative proceedings. Rule 17-1.62(1)(b), Fla. Admin. Code, provides:
Failure of a substantially affected person to file a petition within fourteen (14) days of receipt of notice of agency action or fourteen (14) days of receipt of notice of proposed agency action, whichever notice first occurs, shall constitute a waiver by that person of any right to request an administrative proceeding under chapter 120, F.S.
The only agency action or proposed agency action of which Doheny received notice was DER's September 24, 1981, "Final Order Denying Application For Permit." Surely, Doheny could not be expected to have filed a request for a Chapter 120 hearing in order to contest a decision which was adverse to the applicant. Grove Isle also relies upon Rule 28-5.111(2), Fla. Admin. Code, in asserting that Doheny ignored his point of entry. That section provides:
(2) Any person who receives written notice of an agency decision or who receives written notice of intent to render a decision and who fails to request a hearing *977 within twenty-one (21) days, shall have waived his right to subsequently request a hearing on such matters.
Grove Isle asserts that since "in July of 1981 Doheny knew of DER's decision to accept and process the reapplication," the above rule required Doheny to file a request for a Chapter 120 hearing within 21 days thereafter. That is a patently erroneous interpretation of Rule 28-5.111. Moreover, for the same reasons mentioned above with respect to Rule 17-1.62(1)(b), neither would Rule 28-5.111 contemplate a point of entry for Doheny within 21 days of notice of DER's September 24, 1981, final order adverse to the applicant. Doheny's entry into the subject proceedings was not untimely. He was properly allowed by the hearing officer, without objection, to intervene pursuant to Rule 28-5.207, Fla. Admin. Code, his petition therefor having been filed "at least five (5) days before the final hearing" as provided by that rule.
For the above reasons, I am of the view that DER's final order awarding the default permit to Grove Isle should be reversed and this case remanded to DER for further proceedings in accordance with this opinion. I, therefore, respectfully dissent from the Court's opinion.

ON REHEARING
PER CURIAM.
Appellees' motions for rehearing are granted in part and the previous opinion of the court filed October 4, 1983, is withdrawn. Judge Nimmons' dissenting opinion is adopted as the opinion of the Court.
ERVIN, C.J., and NIMMONS, J., concur.
MILLS, J., dissents.
MILLS, Judge, dissenting:
I would grant the Department's Motion for Rehearing on the Court's order awarding Doheny an attorney's fee of $4,000 and I would vacate the order.
I would deny the Department's Motion for Rehearing on the merits and I would deny Grove Isle's Motions for Rehearing and for Rehearing En Banc.
I adopt my opinion of 4 October 1983 as my dissenting opinion.
This case is a classic example of the lack of finality, delay, undue expense and the poor use of Judges' time. The public constantly complains of these shortcomings and we Judges usually join with them. But, here we are perpetuating the things we are constantly striving to resolve. Ironical.
Four years ago the initial hearing in this case was commenced. Multiple hearings have been held since then.
This is the fourth time this Court has considered this case. How many more APA hearings will be held? How many more appeals will this Court consider? Only "The Shadow" knows.
It is obvious that this case is just commencing. Not even "The Apple" can predict when it will terminate. In the words of the "Bard of Stratford," "Lay on, McDuff, and damn'd be him that first cries, hold, enough!"
But in the meantime, to quote "The Bard" again, "We must not make a scarecrow of the law."
NOTES
[1] A "mixing zone" is defined by Rule 17-3.021(28), Fla. Admin. Code, as "a volume of surface water containing the point or area of discharge and within which an opportunity for the mixture of water with receiving surface waters has been afforded."
[2] Rule 17-4.242, Fla. Admin. Code, provides, in pertinent part:

"(1) Outstanding Florida Waters
(a) No Department permit or water quality certification shall be issued for any stationary installation which significantly degrades, ... or is within Outstanding Florida Waters, unless the applicant affirmatively demonstrates that:
* * * * * *
2. The proposed activity or discharge is clearly in the public interest; and ...,
* * * * * *
b. The existing ambient water quality within Outstanding Florida Waters will not be lowered ...."
[3] 403.0876 Permits; processing.  Within 30 days after receipt of an application for a permit under this chapter, the department shall review the application and shall request submittal of all additional information the department is permitted by law to require. If the appellant believes any departmental request for additional information is not authorized by law or departmental rule, the applicant may request a hearing pursuant to s. 120.57. Within 30 days after receipt of such additional information, the department shall review it and may request only that information needed to clarify such additional information or to answer new questions raised by or directly related to such additional information. If the applicant believes the request of the department for such additional information is not authorized by law or departmental rule, the department, at the applicant's request, shall proceed to process the permit application. Permits shall be approved or denied within 90 days after receipt of the original application, the last item of timely requested additional material, or the applicant's written request to begin processing the permit application. (emphasis supplied)