# BAYSHORE HOMEOWNERS ASSOCIATION, INC., et al. v STATE OF FLORIDA DEPARTMENT OF ENVIRONMENTAL REGULATION and GROVE ISLE, LTD.

Case No. 84-2639

State of Florida, Department of Environmental Regulation

April 11, 1985

## APPEARANCES OF COUNSEL

**Douglas M. Halsey, Thomson, Zeder, Bohrer, Werth, Sdorno & Razook,** and **David A. Doheny** for petitioners.

**Kenneth G. Oertel** and **Segundo J. Fernandez, Oertel & Hoffman, P.A.,** and **Clifford A. Schulman, Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wolff, P.A.,** for respondent, Grove Isle, Ltd.

**E. Gary Earl,** Assistant General Counsel, for respondent, Department of Environmental Regulation.

## OPINION

VICTORIA J. TSCHINKEL, Secretary.

## *FINAL ORDER*

On February 25, 1985, the Division of Administrative Hearings' hearing officer in the above-styled case submitted his Recommended Order to me. A copy of that order is attached as Exhibit A. Pursuant to Section 120.57(1)(b), Florida Statutes, and Florida Administrative Code Rule 17-103.200, all parties to the proceeding were allowed ten days in which to submit exceptions to the Recommended Order. Upon request by Petitioner Bayshore Homeowners Association, Inc. ("Bayshore"), an extension of time to file exceptions was granted to March 25, 1985. Timely exceptions were filed by Bayshore and Respondent Department of Environmental Regulation (the "Department"). Copies of those exceptions are attached as Exhibits B and C, respectively. Respondent Grove Isle, Ltd. ("Grove Isle") filed a timely response to exceptions, a copy of which is attached as Exhibit D.

## *BACKGROUND*

The hearing below in this matter was the fourth in a series of administrative hearings on various permit applications filed by Grove Isle for a permit to construct a marine in Biscayne Bay.

I will not detail the full history of this matter here since the facts are set out in great detail in the various orders of the hearing officers, the Department, and the appellate court.

## INSERT 1

## *RULINGS ON EXCEPTIONS*

In ruling on the exceptions filed by Bayshore and the Department, I first take note of the standard of review set forth in Section 120.57(1)(b), Florida Statutes. That section provides:

> [t]he agency may adopt the recommended order as the agency's final order. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from a review of the complete

**131**

record, and state with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.

In reviewing the hearing officer's findings of fact, the agency may not substitute its opinion for that of the hearing officer.

Bayshore's Exceptions—In its first exception Bayshore objects to the hearing officer's statement of the issue in the hearing as whether the Department should issue Grove Isle a permit to construct a 90—slip marina. Instead, Bayshore argues that the issue is whether Grove Isle should receive a permit to construct *and operate* such a marina. In support of this, Bayshore points to testimony that no operating permit would be required for the marina.

While I accept Bayshore's statement as a more complete statement of the issue, I must conclude that it is irrelevant to the ultimate outcome of the case. In fact, the hearing officer clearly considered and made specific findings of fact regarding the impacts of operation of the marina. In particular, the hearing officer considered the impacts of boat traffic, fueling operations and the potential for sewage discharges. Thus, the operational aspects were adequately evaluated by the hearing officer. These impacts are also addressed in conditions 4, 5, 6, 7, and 9 of the proposed permit.

Bayshore's second exception regarding the acceptance of the testimony of two witnesses by proffer is accepted.

Bayshore's third exception is to the hearing officer's finding of fact that "[i]n 1978 Grove Isle submitted its initial application to DER for construction of the marina which is now the subject matter of this proceeding." Bayshore argues that the application under consideration in this proceeding is legally and factually distinct from the original application since the original application was subsequently amended by Grove Isle.

Similarly, Bayshore takes exception to the hearing officer's finding that the marina which is the subject of this proceeding is identical in design and location to the one initially proposed. Those findings are clarified to read that the subject marina is identical in design and location to the one denied by the Department in its final order of December 29, 1980, and not to the marina originally proposed in 1978.

Bayshore's fifth exception is to the finding of fact that Grove Isle "requested a mixing zone in conformity with DER's final order in

132

Grove Isle I."[1] Bayshore first characterizes this finding as a conclusion of law and then argues that it should be rejected because Grove Isle is not entitled to a mixing zone under Florida Administrative Code Rule 17-4.242, governing activities in Outstanding Florida Waters (OFW's).

This exception must be rejected since the hearing officer's finding is an accurate statement. The Department's final order of December 29, 1980, did suggest that Grove Isle would have to apply for a restricted mixing zone if it were to obtain a permit for the marina. Whether Rule 17-4.242 provides for a mixing zone in an OFW under the facts of this case is irrelevant. The hearing officer's finding does not address that issue. It simply notes, accurately, that a previous order of the Department indicated that a mixing zone would be required.

Bayshore's sixth exception again raises the issue of whether the marina presently proposed is identical to the one proposed in Grove Isle's "initial application." Accordingly, the hearing officer's findings of fact number 11 is clarified as explained in my discussion above of Bayshore's fourth exception.

Bayshore's next exception is to the hearing officer's finding that "[t]he island is currently under development for a 510-unit condominium community with associated facilities such as a restaurant, hotel, and the proposed marina." I do not find any of the points raised in the exception to be relevant. Since there is competent substantial evidence in the record to support the findings of fact, I reject the exception.

The eighth exception objects to the finding in paragraph 15 of the Recommended Order that the only "important biota" in the immediate area of the marina site are seagrasses. Bayshore points to testimony of one of its witnesses regarding the presence of sponges, an algal mat, burrowing shrimp, burrowing worms, and other organisms.

After reviewing the entire record, I must conclude that there is competent substantial evidence to support the hearing officer's findings. There is testimony throughout the record on the impacts of the proposed marina on biota at the site, and it is not my role to reweigh the evidence considered by the hearing officer.

Next Bayshore takes exceptions to the finding by the hearing officer that the restriction of ownership of boat ships at the marina to residents at the condominium would assure that the kind and fre-

---

[1] The reference to Grove Isle I is to the Department's final order dated December 29, 1980, denying a permit to Grove Isle and the decision of the First District Court of Appeal upholding that denial in *Grove Isle, Ltd. v. Bayshore Homeowners' Association, Inc.*, 418 So.2d 1046 (Fla. 1st DCA 1982).

quency of boat traffic in the area would not change. Again, while there may be contradictory evidence in the record, it is not my role to substitute my findings for those of the hearing officer. I must agree with Grove Isle that the record contains competent substantial evidence to support the hearing officer's finding. In its tenth exception, Bayshore points to contradictory evidence in the record regarding the effect on navigation of construction of the marina and marking of a Channel. The hearing officer's finding of fact number 18 states:

> Potential damage, from existing craft and those which will occupy the marina, to the seagrasses on the north, east, and south of the island will be eliminated or minimized by the planned installation of navigation markers by Grove Isle. These markers will channel boats into water of a navigable depth and lessen the number of groundings and near groundings which cause the scarring.

There is specific testimony in the record to support this finding of fact, thus Bayshore's exception must be rejected.

Bayshore's next exception is to the hearing officer's finding that the amounts of pollutants naturally emitted as a result of a marina operation "would not be measurable." Contrary to Bayshore's contention, there is sufficient evidence in the record supporting this finding. For example, the Department witness, Mr. O'Donnell, testified on several occasions that impacts of pollutants would not be measurable. (T. at 452-55, 483-84). The fact that there may be some contradictory evidence is not a basis for overturning the hearing officer's finding of fact.

In paragraph number 20 of the Recommended Order, the hearing officer rejected Bayshore's argument that the operation of a marina in the area proposed by Grove Isle would result in resuspension of sediments causing increased turbidity. The hearing officer reached this result on two grounds. First, he held that the issue was raised and resolved in the prior permit proceeding. Second, he found that existing boating activity in the area was not causing such problems. Bayshore takes exception to this finding.

Since I find that there is competent substantial evidence in the record (T. 277-80) to support the hearing officer's finding and since Bayshore was allowed to present testimony on the issue, I don't need to reach the issue of whether *res judicata* applies. Bayshore's exception is rejected.

In its thirteenth exception, Bayshore appears to object to the fact that the hearing officer has made no findings regarding the presence of manatees at the proposed marina site and the impact of marina

134

operation on manatees. Bayshore argues that the existence of manatees at the site would constitute changed conditions and would justify denial of the permit application.

I have reviewed the transcript and record in detail and find no basis for finding that changed conditions exist as a result of manatee sitings.

Next Bayshore takes exception to the finding of the hearing officer that the waters in the area of the marina have been used extensively by the public for such uses as fishing and water skiing.

After reviewing the record, I must reject Bayshore's exception. There is testimony throughout the record regarding the various uses made of adjacent waters, much of it from Bayshore's own witnesses.

Bayshore's fifteenth and sixteenth exceptions relate to the hearing officer's findings regarding the necessity for Grove Isle to obtain approval from the Trustees of the Internal Improvement Trust Fund to use state owned lands. In paragraph 23 of the Recommended Order, the hearing officer held that Grove Isle had previously obtained the requisite consent to use state lands and that that consent remained binding. The issue of whether the Department of Natural Resources (DNR), has given consent to use state owned lands was addressed in the first proceeding by the district court. In that case, DNR determined that no lease was required and the district court affirmed that decision. *Grove Isle, Ltd. v. Bayshore Homeowners' Association, Inc.*, 418 So.2d 1046, 1047 (Fla. 1st DCA 1982). In that case, a separate administrative proceeding had been held on the issue of DNR consent.

I would note that DNR was not a party to the proceeding below. Moreover, as head of the Department of Environmental Regulation, I have no authority to bind DNR by my final order. Issuance of a Department permit for construction of the subject marina does not constitute approval to use state lands. The First District Court of Appeal has recently affirmed that a Department permit may be issued conditional upon the permit applicant obtaining any necessary approvals from DNR. *Hollingsworth v. Department of Environmental Regulation*, 10 FLW 762 (Fla. 1st DCA 1985). Under the circumstances, I reject the hearing officer's conclusion of law (inappropriately characterized as a finding of fact) regarding the binding nature of DNR's previous position. If necessary, that issue may be resolved in separate proceedings before the DNR.

In its seventeenth exception Bayshore argues that the hearing officer erred in finding that Grove Isle applied for a mixing zone in accordance with the Department's final order of December 29, 1980. I have already rejected this argument in my response to exception number 5.

**135**

Bayshore also challenges the hearing officer's finding that the mixing zone applied for by Grove Isle was smaller than the area found by the district court in Grove Isle I to be the appropriate area to measure ambient water quality. Since I have concluded as a matter of law, as discussed below, that Grove Isle does not need a mixing zone, I do not find it necessary to address the issue of the actual size of the mixing zone requested.

Bayshore's next exception challenges paragraph 27 of the Recommended Order in which the hearing officer states.

> In the instant case the testimony of Mr. O'Donnell was clear that DER accepted the opinion of Grove Isle I as demonstrating satisfaction of ambient water quality under the OFW rule. Consequently, DER has acceded that ambient water quality is to be measured not only within the project site but also within a reasonably contiguous area of the project site, as found by the hearing officer in Grove Isle I.

Bayshore argues that the hearing officer misapprehends the holding in Grove Isle I. As Bayshore notes in its exception, the hearing officer in Grove Isle I concluded that ambient water quality at the project site should not be considered. Instead, he looked at ambient water quality only in the general project area. While it is not clear from reading paragraph 27 of the Recommended Order alone, when the hearing officer's subsequent findings in paragraphs 28 and 29 are considered it appears that he did correctly interpret Grove Isle I. To the extent that the hearing officer's finding is inconsistent with my analysis, however, it is modified to hold that under Grove Isle I, the Department failed to provide sufficient evidence to justify a holding that water quality should be measured at the project site.

However, I must reject the hearing officer's finding that the Department "acceded" to the fact that ambient water quality was to be measured only in the general project area. At no point in his testimony does Mr. O'Donnell specifically address the question of where ambient water quality standards are to be measured. His entire testimony regarding water quality related to whether ambient water quality would be degraded as a result of construction and operation of the marina.

Bayshore's twentieth and twenty-first exceptions object to the hearing officer's finding of fact number 29 that, for purposes of establishing compliance with the OFW rule, ambient water quality is to be measured within the general project area set by the hearing officer in Grove Isle I. The hearing officer reaches this conclusion on two grounds; first, that the doctrine of *res judicata* bars relitigation of this issue, and

136

second, that the testimony of Ms. Water regarding where water quality standards should be applied must be rejected.

Bayshore argues that the holding of the First District Court of Appeal in *Grove Isle, Ltd. v. Bayshore Homeowners' Association, Inc.*, 418 So.2d 1046 (Fla. 1st DCA 1982), does not bar reconsideration of this issue in this case. The Grove Isle court stated:

> DER offered no expert testimony of evidence, other than conclusory allegations, that ambient water quality must be measured within the project site rather than within the reasonably contiguous area used by the hearing officer. . . . Because DER's conclusion regarding the location of ambient water quality measurement was based upon nonrule policy which was susceptible of verification by evidence in proceedings before the hearing officer, but which was not proved by DER, the conclusion is vacated.

*Id.* at 1049.

I would agree with the hearing officer that the issue of where water quality standards should be applied may not be relitigated in this case. Bayshore argues that the district court in Grove Isle I would have remanded the case to the Department to further explicate its non-rule policy except that it found an independent basis for denying Grove Isle's permit on grounds of public interest. A careful reading of the district court's opinions in *Grove Isle, Ltd. v. Bayshore Homeowners' Association, Inc., supra*, (Grove Isle I) and *Doheny v. Grove Isle, Ltd.*, 442 So.2d 966, reh. granted 442 So.2d 977 (Fla. 1st DCA 1983), (Grove Isle II) does not support this contention.

In Grove Isle I, the district court "vacated" the Department's conclusion regarding measurement of ambient water quality on the grounds that the Department had not presented testimony sufficient to justify its non-rule policy. There is no suggestion in that opinion that the court would have remanded the case under any circumstances.

In the original opinion in Grove Isle II, the majority held that estoppel by judgment precluded the parties from relitigating the water quality issue (*Doheny v. Grove Isle, Ltd.* at 970). While that opinion was withdrawn on rehearing and Judge Nimmon's dissenting opinion adopted, the reasoning of the court in the original opinion is sound. On rehearing, the court held that it was premature at that point to decide the case on the grounds of *res judicata* or estoppel by judgment but suggested that those doctrines would apply unless Grove Isle could show new facts or changed conditions. *Id.* at 976.

While it would be appropriate for the Department to attempt to

establish its non-rule policy in other proceedings involving other permits, I conclude that it is not appropriate to allow the Department two bites at the apple when, as in this case, the same project is involved and there are no changes in the permit application that would affect the water quality issue.

My holding on this point makes it unnecessary for me to rule on Bayshore's exception regarding the sufficiency of Ms. Water's testimony on the measurement of ambient water quality.

I would, however, accept Bayshore's exception number 22 regarding the interpretation of the mixing zone language in the OFW rule. The rule itself provides that mixing zones in OFW's are allowed only for certain thermal discharges from electrical power plants or on a temporary basis during construction. In this respect, I specifically reject the hearing officer's statement in paragraph 29 of the Recommended Order that:

> The OFW rule, Rule 17-4.242(1)(a)2.b., clearly contemplates and authorizes a mixing zone for purposes other than construction.

I would also note that while this statement is contained in the hearing officer's findings of fact, it is actually a legal conclusion, and, as such, is not subject to the same standard of review as a finding of fact.

Rule 17-4.242(1)(a)2.b provides only one situation in which water quality in an OFW may be lowered below ambient levels. Water quality may be lowered

> only on a temporary basis during construction for a period not to exceed thirty days; lowered water quality would occur only within a restricted mixing zone approved by the Department; *and*, water quality criteria would not be violated outside the restricted mixing zone (emphasis added).

All three of these requirements must be met if water quality is to be lowered.

Bayshore's next exception to finding of fact number 30 is rejected. To the extent that the hearing officer found that the Department voluntarily accepted the holding in Grove Isle I that ambient water quality was to be measured only in the general project area as opposed to the specific project site, the finding is rejected. I have already held, however, that the Department is precluded from raising that issue by the doctrine of estoppel by judgment.

In addition, there is a second basis for upholding the hearing officer. As I have already held in ruling on exceptions numbers 11 and 12,

138

there would be no measurable lowering of water quality as a result of the construction or operation of the marina. Thus no mixing zone is required.

All of the remainder of Bayshore's exceptions (numbers 24-32) either challenge conclusions of law contained in the Recommended Order or request that additional conclusions of law be made. Bayshore objects to the third conclusion of law on the grounds that it mistakes Bayshore's legal position regarding the applicability of the doctrines of *res judicata*, estoppel by judgment or *stare decisis*. Since Bayshore is in the best position to address its legal position, I accept its statement that it acknowledges that estoppel by judgment might apply but that it does not agree that elements of that doctrine have been established in this case.

Bayshore's next exception is to the statement in the hearing officer's fifth conclusion of law that the final hearing in this cause was simply an "instant replay" of the hearing in Grove Isle I.

To the extent that that statement reflects the fact that the same basic project design is at issue in this case as in Grove Isle I and that many of the same factual and legal issues are being raised, the hearing officer's statement is accepted.

Bayshore's twenty-sixth exception is rejected. The hearing officer does not state that Bayshore has abused the process to harass Grove Isle. His statement that "a party should not be permitted to litigate or relitigate the same issues, to the harassment and vexation of his opponent" is a correct statement of law.

The next exception again raises the issue of whether the proposed marina is clearly in the public interest. The hearing officer concluded that the public interest test of the OFW rule, Florida Administrative Code Rule 17-4.242(1)(a)2., does not apply to Grove Isle's project since the First District Court in *Grove Isle, Ltd. v. Department of Environmental Regulation*, 454 So.2d 571 (Fla. 1st DCA 1984) (Grove Isle III), had held that that requirement was invalid. One of the court's reasons for invalidating the public interest requirement was that the Department had not limited its assessment of what constituted the public interest to environmental considerations. Instead the Department had considered other issues such as whether the general public had access to the project. Bayshore does not disagree with the hearing officer on this point. It argues, however, that Section 403.088, Florida Statutes, contains a public interest test independent of Rule 17-4.242 that should have been applied by the hearing officer, and that Grove Isle's project does not meet that test.

139

Section 403.088(1)(b) provides, in part, that the Department:

> may issue an operation permit if it finds that such degradation is necessary or desirable under federal standards and under circumstances which are clearly in the public interest.

The district court in Grove Isle III did not address the issue of whether Section 403.088 provided a separate public interest that would apply to Grove Isle's marina.

Grove Isle argues that it is not subject to Section 403.088 since it has only applied for a construction permit, not an operating permit. Whether Section 403.088 would apply to a project such as a marina for which the Department typically does not require a separate operating permit is an issue I do not need to decide today. Even assuming that such an application is correct, I conclude that Grove Isle has provided reasonable assurances that its project is clearly in the public interest. The hearing officer's conclusion of law to the contrary is rejected.

The hearing officer's discussion on this point is somewhat confusing since he talks about the state having "ceded public lands, without compensation, to a private developer, for strictly commercial purposes." The issuance of a dredge and fill permit does not cede any state lands. The thrust of the hearing officer's holding, however, appears to be that the marina would not be open to the general public and thus would not provide recreational opportunities or other access to the public at large.

Based on Grove Isle III, I must conclude that this is an invalid application of the public interest test. That court held the public interest test under the OFW rule to be invalid because:

> [t]he "public interest" requirement is not tied to any particular form of air or water pollution, or even to pollution in general.

In light of this holding, the Department interprets the public interest test of Section 403.088 to encompass only factors relating to the environmental impacts of a proposed project. Under this construction of the statute, I conclude that Grove Isle's marina is clearly in the public interest. It is clear from a review of the record that Grove Isle made a number of modifications to its original proposal intended to provide an environmental benefit to Biscayne Bay. Specifically, Grove Isle agreed to install rip rap and plant mangroves in the area of the marina, mark navigation channels to prevent damage to grass beds, and make a dewage pump-out facility for boats available to the general public. The testimony of a number of witnesses is uncontradicted that these actions will provide an environmental benefit. Moreover, they

would not be required, absent the public interest test, for issuance of the permit.

As requested by Bayshore in its exception number 28, I make an additional conclusion of law that Bayshore has standing under Section 120.57, Florida Statutes. I would note that neither Grove Isle nor the Department challenged Bayshore's standing in this proceeding and Bayshore was allowed to participate as a party.

Bayshore's next exception appears to object to the hearing officer's failure to make any findings on what Bayshore characterizes as the Department's inconsistency in the various proceedings on this project. Bayshore does not specifically request any additional findings or conclusion be made, and I find no basis in the record for doing so.

I reject Bayshore's thirtieth exception on the grounds that the hearing officer's conclusion regarding impacts on navigation is based on competent substantial evidence of record.

Bayshore's final exceptions (31 and 32) address the issue of the marina's impact on manatees and the hearing officer's conclusions that the project would meet the public interest test of Chapter 253, Florida Statutes. After reviewing the transcript of the hearing, and I cannot agree that the hearing officer was incorrect since there is clearly evidence to support his conclusion.

Department's Exceptions—The Department files one exception requesting that paragraphs 26—29 of the Recommended Order relating to the appropriate location to measure ambient water quality under the OFW rule be clarified. This issue has already been addressed in my discussion of Bayshore's exceptions 18 through 10 and need not be repeated here.

Accordingly, having considered the record and pleadings in this matter, it is

ORDERED that:

1. The hearing officer's findings of fact and conclusions of law, as modified herein, are adopted and made a part of this final order.

2. Within 30 days of entry of this final order, the Department shall issue a permit to Grove Isle to construct the proposed marina subject to the conditions contained in the Notice of Intent to Issue Permit and the Recommended Order.

3. In addition, the permit shall be conditional upon Grove Isle obtaining any required approval from DNR.