577 So.2d 1383 (1991)
TOWN OF PALM BEACH, Dave E. Darwin, and Sierra Club, Appellants,
v.
STATE of Florida DEPARTMENT OF NATURAL RESOURCES and 2000 Condominium Association, Inc., Appellees.
Nos. 89-2691, 89-2747.
District Court of Appeal of Florida, Fourth District.
April 10, 1991.
*1384 John C. Randolph and J.A. Jurgens of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellant-Town of Palm Beach.
Terrell K. Arline of Terrell K. Arline, P.A., Palm Beach Gardens, for appellants-Dave E. Darwin and Sierra Club.
Kenneth J. Plante, General Counsel, and Dana M. Wiehle, Asst. Gen. Counsel, Tallahassee, for appellee-State of Fla., Dept. of Natural Resources.
Daniel S. Rosenbaum and Steven R. Hicks of Becker, Poliakoff & Streitfeld, P.A., West Palm Beach, for appellee-2000 Condominium Ass'n, Inc.
WARNER, Judge.
This is an appeal from a final order of the Department of Natural Resources denying an administrative hearing to appellants, the Town of Palm Beach, Dave E. Darwin and the Sierra Club, on their petitions challenging the Department's determination that it lacked jurisdiction to issue a permit for certain dune landscaping activities eastward of the coastal construction control line. We reverse.
In 1988 the Department issued a permit to 2000 Condominium to conduct certain landscaping activities on its property upon the satisfaction of several special conditions. *1385 The issuance of the permit was challenged in an administrative hearing requested by appellants who were all petitioners. In June of 1989, 2000 Condominium (hereinafter referred to as 2000) submitted a plan for the trimming of beach-dune vegetation and removal of non-indigenous vegetation on 2000's property seaward of the Palm Beach County Coastal Construction Control Line as an attempt to resolve the pending DOAH proceeding. The Department notified appellee 2000 that a DNR permit would not be required if the proposed landscaping activities consisted merely of trimming and maintenance of native salt-resistant dune vegetation.[1] After reviewing additional information, the Department notified appellee 2000 that the proposed activities "do not fall within the Department's jurisdiction as they do not involve excavation or removal and destruction of native salt resistant vegetation, therefore no permit will be required through this agency."
In response, the appellants herein filed petitions requesting a formal administrative hearing under section 120.57, Florida Statutes (1989), to challenge the determinations made by the Department. The Town of Palm Beach specifically alleged that it owned Phipps Ocean Park which was within 1000 feet of 2000's property, and the park and dune would suffer damage if 2000's landscaping activity were to proceed. Appellant Darwin also alleged that he was an owner of property within 1000 feet of 2000's property and that his property would also be substantially affected by 2000's proposed landscaping by the degradation of the environment, destruction of native plants and vegetation, adverse effects on endangered species and their habitat, and adverse effect on Darwin's property by disrupting the dune system. The Sierra Club alleged that its members were substantially affected because its membership uses the beaches surrounding 2000's property and the Club is very active in protecting the beaches of Florida. It alleged that the activities of 2000 would adversely affect its membership in the same ways as enumerated by the other appellants.
Without a hearing, the Department determined that all of the appellants lacked standing to request a formal hearing because they had failed to show a substantial interest in the outcome of the hearing. The Department determined that it lacked jurisdiction over 2000's trimming activities, and the petitioners had failed to show how they were affected by the Department's determination of its jurisdiction.
On appeal the appellants claim they have standing to request an administrative hearing under Agrico Chem. Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1982), rev. denied, 415 So.2d 1359 (1982). However, appellees argue that the parties lack standing because DNR lacks jurisdiction over 2000's landscape plan. Therefore, since its determination of no jurisdiction is a question of law not fact, the appellants have no right to initiate a formal administrative proceeding questioning that determination pursuant to section 120.57, Florida Statutes.
We disagree with the Department's contention that it is without jurisdiction of the subject matter of the landscaping activities proposed in appellee 2000's plan. The Department contends that it has no jurisdiction over any "landscaping" activities seaward of the Coastal Construction Control Line unless they involve excavation or removal and destruction of native salt resistant vegetation.
A review of statutory provisions indicates that the Department's jurisdiction is broader than what appellees advocate. Section 370.02(5)(a)2, Florida Statutes (1989) provides that the Department of Natural Resources shall be the state agency for "processing of applications and issuing *1386 of permits prior to commencement of work for all coastal construction, physical activity, or structures pertaining thereto... below the mean high-water line of any body of tidal water... ." "Coastal construction" is defined to include "any work or activity which is likely to have a material physical effect on existing coastal conditions or natural shore processes." § 370.01(17), Fla. Stat.; § 161.021(6), Fla. Stat. Section 161.053, Florida Statutes provides that the Department shall establish the coastal construction control line so that the state can preserve and protect the beaches of the state from "imprudent construction which can jeopardize the stability of the beach-dune system". Once such a line is established "no person ... shall construct any structure whatsoever seaward thereof; make any excavation, remove any beach material ...; or damage or cause to be damaged such sand dune or the vegetation growing thereon seaward thereof, except as hereinafter provided." § 161.053(2), Fla. Stat. Section 161.053(5), Florida Statutes, provides that a permit to alter, excavate or construct property seaward of established coastal construction control lines may be granted in certain circumstances listed. Those circumstances deal primarily with excavation or the construction of structures. There is no mention of permits for re-vegetation, or dune management activities, although the statutes do provide that the department may condition the nature, timing and sequence of construction activities to provide protection... . to native salt-resistant vegetation and endangered plant communities." § 161.053(10), Fla. Stat.
The administrative rules enacted by the Department also show that the Department has jurisdiction to regulate the landscaping activities of 2000 and has discretionary power to require permits for such maintenance activity. Rule 16B-33.04 F.A.C., "Exemptions from Permit Requirements", provides:
(7) At the discretion of the staff, utilizing applicable criteria, the following may be considered not to fall within the meaning and intent of Sections 161.052 and 161.053, Florida Statutes:
(f) Maintenance of existing beach/dune vegetation following staff guidelines.
What can be gleaned from all of these statutes and rules is that the DNR has authority to regulate by the permitting process all coastal construction activity: that is all activity that is likely to have a material physical effect on the existing coastal conditions or natural shore and inlet processes. Thus, the process of determining that trimming or other dune management activities do not require permits must be based upon a factual finding that such activities will not have a material effect on the coastal system. Otherwise, DNR permitting power may be exercised.
Based on the foregoing and implicit in its order determining that the Department lacked jurisdiction over the activities of appellee 2000 was the finding of a jurisdictional fact that those activities would not damage the beach/dune system. However, this determination was made without giving the appellants the benefit of a hearing pursuant to section 120.57, Florida Statutes. On this point we agree with Burleson v. Department of Administration, 410 So.2d 581 (Fla. 1st DCA 1982) that a party is entitled to a hearing to contest a finding of lack of jurisdiction when that determination is based upon disputed facts. In this case there is a substantial dispute as to the damage, if any, which 2000's activities may do to the dune system.
Having established that an affected party is entitled to a hearing in this case, the next question is whether appellants are affected parties within the meaning of the Administrative Procedures Act. The appellees claim they are not because they have failed to allege how they are injured by the jurisdictional determination of the department. Citing Grove Isle, Ltd. v. Bayshore Homeowners' Ass'n, Inc., 418 So.2d 1046 (Fla. 1st DCA 1982), rev. denied, 430 So.2d 451 (Fla. 1983), they argue that appellants' *1387 injuries, if any, will occur by the implementation of the proposed project not by the jurisdictional determination.
We think this case is distinguishable from Grove Isle. In that case, the court held that a determination that a lease of sovereign submerged lands was not required in order for a developer to construct a marina did not "substantially affect" the interests of the appellees in preventing injury to Biscayne Bay. The court reasoned that the determination of the necessity of a lease and the consequent payment of rent simply did not implicate issues regarding the pollution to Biscayne Bay which may result from construction of the marina, and appellees interests were fully protected through the construction permitting process for the marina.
In contrast, the Department's decision that it lacked jurisdiction to require a permit for the landscaping activities of appellee meant that no state permitting process will be required. Absent local regulation of the activities 2000 is free to commence these activities. Thus, while in Grove Isle the decision regarding the lease did not give the developer a green light to commence construction of the marina, the jurisdictional decision in the instant case allows the appellee to commence immediate landscaping activity unless it conflicts with local ordinances.
DNR then claims that where its decision only eliminates an area of state regulation but the project is subject to local control, a party does not have standing to challenge the determination that a project is exempt from state permitting requirements. See Suwannee River Area Council Boy Scouts of America v. State, Dep't of Community Affairs, 384 So.2d 1369 (Fla. 1st DCA 1980). In Suwannee River, the court held that third parties did not have standing to challenge a decision of the Department of Community Affairs as to whether a project was a development of regional impact, requiring state review. The court noted that the challenging parties were adjoining landowners and that the purpose of Chapter 380 providing for Development of Regional Impact review was to identify matters affecting the public in general on a regional basis, not special interest of adjoining landowners.
We think that Suwannee River is distinguishable because of the significant statutory differences between the state involvement in developments under DRI and its involvement in beach and shore preservation under Chapter 161. Under Chapter 161 the primary jurisdiction over all beaches in the State of Florida is with DNR. County and municipal regulation may be established in lieu of state regulation only where specifically approved by the Department. Section 161.053(4), Florida Statutes provides:
Any coastal county or coastal municipality may establish coastal construction zoning and building codes in lieu of the provisions of this section, provided such zones and codes are approved by the department as being adequate to preserve and protect the beaches and coastal barrier dunes adjacent to such beaches which are under the jurisdiction of the department from imprudent construction that will jeopardize the stability of the beach-dune system, accelerate erosion, provide inadequate protection to upland structures, endanger adjacent properties, or interfere with public beach access. Exceptions to locally established coastal construction zoning and building codes shall not be granted unless previously approved by the department. It is the intent of this subsection to provide for local administration of established coastal construction control lines through approved zoning and building codes where desired by local interests and where such local interests have, in the judgment of the department, sufficient funds and personnel to adequately administer the program. Should the department determine at any time that the program is inadequately administered, the department shall have authority to revoke the authority granted to the county or municipality.
*1388 Furthermore, some permitting activities may be delegated to a coastal county or municipality under section 161.053(16), Florida Statutes:
In keeping with the intent of subsection (4), and at the discretion of the department, authority for permitting certain types of activities which have been defined by the department may be delegated by the department to a coastal county or coastal municipality. Such partial delegation shall be narrowly construed to those particular activities specifically named in the delegation and agreed to by the affected county or municipality, and the delegation may be revoked by the department at any time if it is determined that the delegation is improperly or inadequately administered.
The statutory scheme reveals that the state exercises jurisdiction over all of the beaches eastward of the coastal construction control line to the exclusion of the local agencies.[2] Thus, it is unlike the developmental concerns addressed by Chapter 380 which leave development as a matter of local concern until it reaches a specific size.
In Agrico Chem. Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981), rev. denied, 415 So.2d 1359 (1982), the court developed a two prong test to determine the standing of a party in a proceeding under 120.57. The party must show (1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and (2) that his substantial injury is of a type or nature which the proceeding is designed to protect.
We hold that by alleging adverse impacts to their properties as well as the beach/dune system itself the parties have sufficiently alleged injury in fact in order to satisfy the first test. See In re Surface Water Management Permit No. 50-01420-S, 515 So.2d 1288 (Fla. 4th DCA 1987). In terms of immediacy of the adverse impact we frankly see no difference in a decision which holds the Department will not exercise jurisdiction regarding the permit which in practical effect will allow the project to proceed and the determination that a permit should be granted which will also allow the project to proceed. See Hillsboro-Windsor Condominium Ass'n v. Department of Natural Resources, 418 So.2d 359 (Fla. 1st DCA 1982) and Woodholly Associates v. Department of Natural Resources, 451 So.2d 1002 (Fla. 1st DCA 1984). As to the second prong of the test, we hold that the statute and administrative proceedings are designed to protect the entire beach/dune system of the state of Florida, and appellants allege that 2000's proposal will harm the dune system in the area of appellee's property. Therefore appellants have made sufficient allegations to meet the test of standing under Agrico and are entitled to a hearing to present evidence to support their allegations of standing. Sullivan v. Northwest Florida Water Management District, 490 So.2d 140 (Fla. 1st DCA 1986).
Based on the foregoing we reverse the Final order of the Department of Natural Resources with directions to provide a hearing to appellants in accordance with section 120.57, Florida Statutes, and consistent with this opinion.
POLEN, J., and SHAHOOD, GEORGE A., Associate Judge, concur.
NOTES
[1] The "trimming" included cutting down all non-native trees to 4" stumps and cutting seagrapes to a uniform heighth of 3 1/2 feet.
[2] Whether it has delegated its jurisdiction in the permitting of activities of the Town of Palm Beach is not revealed in this record.