580 So.2d 267 (1991)
FRIENDS OF THE HATCHINEHA, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, et al., Appellees.
No. 90-1489.
District Court of Appeal of Florida, First District.
May 14, 1991.
*268 Robert L. Hovious and Richard F. Wall of Hartley & Wall, Orlando, for appellant.
Joseph W. Landers, Jr. of Landers and Parsons, Tallahassee, for appellees.
ERVIN, Judge.
Appellant, Friends of the Hatchineha, Inc. (Friends), appeals from a final administrative order entered by appellee, Department of Environmental Regulation (DER), denying its petition for a formal administrative hearing. Friends contends that DER's decision that the driveway under consideration qualified for the agricultural exemption to the dredge and fill permitting process was final agency action, from which Friends could seek a formal administrative hearing under Section 120.57, Florida Statutes (1989). We agree and reverse and remand for further proceedings.
On March 15, 1990, Friends filed a petition requesting a formal administrative hearing pursuant to Section 120.57, Florida Statutes (1989). Friends alleged that it was a nonprofit Florida corporation with environmental and conservancy concerns, having special emphasis on Lake Hatchineha and its surrounding lands, and that its members actively and regularly use the lake and have a substantial interest in the integrity and quality of its water, as well as the preservation of its natural vegetation habitat and ecological system.
Friends further stated that on or before November 1989, appellee Louis Fischer constructed a driveway without a permit through more than a mile of previously undisturbed wetlands near the lake, which was owned by appellee London Creek Associates (London Creek). Subsequently Sergeant Allen, an officer of the Florida Game and Fresh Water Fish Commission, observed the driveway, which he determined was built within DER's jurisdictional dredge and fill lands, and issued a complaint affidavit charging Fischer with violating Section 403.161, Florida Statutes (1989).[1]
Thereafter on December 28, 1989, DER inspected the driveway, and, as a result, issued a warning notice to Fischer for unauthorized dredging and filling without a permit. In defense, Fischer responded that the driveway was necessary to maintain cattle ranch operations on the property. As such, he claimed that it was exempt from DER's wetlands resource management authority pursuant to Section 403.927, Florida Statutes (1989). In a letter dated February 9, 1990, Friends requested an opportunity to participate in the administrative process prior to any final action by DER.
By letter dated February 27, 1990, DER informed Fischer that the department considered the access road exempt from the permitting requirements, pursuant to section 403.927. DER also notified Friends on the same date of its decision in a letter stating, "It is the department's position that the road qualifies for the agricultural exemption... . Until the use of the site changes to something other than agricultural, the department's position will not change."
*269 Following receipt of that letter, Friends filed its petition for formal administrative hearing. Friends disputed Fischer's assertion that the driveway was necessary for cattle ranch operations on the property. Instead, Friends contended that the predominant purpose of the driveway was to provide access to Fischer's recently constructed residence.
London Creek and Fischer responded with a motion to dismiss Friends' petition, arguing that the exemptions are self-executing and are authorized, not by DER, but by operative statutes or rules. Accordingly, the motion continued, because DER takes no action concerning these exemptions, there was no action for Friends to contest.
On April 24, 1990, DER issued a final order dismissing the petition. DER held that the agricultural exemption deprived it of jurisdiction over the driveway, therefore, no agency action could be taken. It concluded, as a matter of law, that Friends' petition for a formal administrative hearing was inappropriate, because there had been no agency action.
Section 120.57(1), Florida Statutes (1989), provides for formal administrative proceedings to resolve disputed issues of material fact. To be entitled to a section 120.57 hearing, there must be final agency action affecting the petitioner's substantial interests, coupled with a disputed issue of material fact. General Dev. Utils., Inc. v. Florida Dep't of Envtl. Reg., 417 So.2d 1068, 1070 (Fla. 1st DCA 1982). Section 120.52(2), Florida Statutes (Supp. 1988), defines agency action as "the whole or part of a rule or order, or the equivalent, or the denial of a petition to adopt a rule or issue an order."
DER is authorized by the "Warren S. Henderson Wetlands Protection Act of 1984," Sections 403.91 through .929, Florida Statutes (1989), to adopt rules and regulations governing activities in waters to their landward extent. No person shall dredge or fill in, on, or over surface waters within DER's jurisdiction without a permit issued by the department, unless exempted by statute or rule. § 403.913(1), Fla. Stat. (1989). Thus, DER is authorized by the statutes to create a permitting process for dredge and fill operations. § 403.912(1), Fla. Stat. (1989). In granting such authority to DER, the legislature recognized the great value of farming to the state and that continued agricultural activity is compatible with wetlands protection. § 403.927(1), Fla. Stat. (1989). It therefore exempted agricultural activities, as described in section 403.927(4)(a), from the Wetlands Protection Act pursuant to the provisions of section 403.927(2).[2]
Appellees contend that DER's letters of February 27 to Fischer and appellant, expressing its opinion that the access road is exempt, do not constitute final agency action for which appellant would have a right to a section 120.57 hearing. Fischer and London Creek argue that DER has interpreted section 403.927 as creating a self-executing exemption for which no agency action is required. In support thereof, appellees rely upon several of DER's final agency orders. Of particular importance to their argument is Saltiel v. Leon County, 6 F.A.L.R. 6894 (Fla.Dept.Envtl.Reg. 1984), *270 which involved a dismissal of a petition for formal administrative hearing challenging DER's mosquito control exemption to the dredge and fill prohibition. Although it is unclear precisely what the facts were in Saltiel, it appears that a third party filed a petition in response to the issuance of a letter by DER to Leon County authorizing proposed maintenance work. Leon County had in fact met with the department prior to commencing the maintenance work to ascertain whether the work, which consisted of dredging material from a ditch, was exempt. In denying the third party's petition, DER explained that the exemptions are from permitting procedures. Because the department lacked sufficient manpower to process permit applications for all dredge and fill activities, it created exemptions to encourage appropriate dredge and fill practices and to eliminate the necessity of permitting for activity having insignificant impact on the environment. Id. at 6895. No action by the department was deemed necessary prior to an individual's undertaking the exemption activities; instead, the department had taken action when it developed and adopted the rule of exemption. The department's letters of exemption, pursuant to this theory, did not create the exemptions, but affirmed the individuals' apparent eligibility for exemptions. Therefore, according to the department, there was no basis for a petition for formal hearing of an individual's use of an exemption or of the agency's notifying an individual of his or her apparent eligibility for an exemption. Id. at 6895-96.
Additionally, appellees rely on Downing v. Glover, 9 F.A.L.R. 6423 (Fla.Dept.Envtl. Reg. 1987). That case involved a petition for formal hearing in which Downing objected to the department's expressed intent to issue Glover a permit for construction of a bulkhead. Specifically the petitioner alleged that a docking structure to be associated with the bulkhead should not be exempt from permitting procedures. An exemption, however, exists for installation of certain private docking facilities, which DER found applied in that case. In dismissing the petition, DER reasoned that a petitioner may request a formal administrative hearing only if the agency action in question affects his or her interests. Because the department has no power to and does not authorize exemptions, and therefore takes no action concerning the use of the exemptions, there was no agency action for the petitioner to contest. Id. at 6423. See also Faller v. Department of Envtl. Reg., 10 F.A.L.R. 1351, 1356 (Fla.Div.Admin.Hearings 1988) (landowner's withdrawal of application for dredge and fill permit divested DER of authority).
Initially, before proceeding to the merits of our decision, we think it important to state what issues are not before us. No contention, first, has been raised that Friends does not have standing, as a substantially interested party, to contest the issuance of Fischer's exemption. Nor has any serious argument been asserted that the decision to exempt the activity as agricultural was only nonfinal, preliminary agency action which was subject to further agency review. See Florida League of Hosps. v. Hospital Cost Containment Bd., Dep't of Ins., 492 So.2d 431, 433 (Fla. 1st DCA 1986). It is essentially the department's position that in taking the action which it did, i.e., in issuing the letter of exemption, it took no agency action at all. If we correctly understand DER's novel and frankly, to us, rather confusing argument, it is that once DER determined the agricultural exemption applied, the department thereafter had no jurisdiction to prevent the construction of the driveway on the wetlands; consequently the letter of exemption was self-executing and no administrative hearing was available. In other words, although the department acknowledges that it initially possessed jurisdiction to determine whether an agricultural exemption applied to the activity in question, having made this determination, erroneous or otherwise, its decision was thereafter insulated from further administrative review, in that it was divested from jurisdiction to take any further action, including that of changing its mind. We consider it necessary to repeat again that which was stated fourteen years ago by *271 this court in its consideration of the 1974 Administrative Procedure Act (APA):
We recently held that every agency action is "a recognizable rule or an order" under the APA or is "incipiently a rule or order." State ex rel Dep't of Gen. Serv. v. Willis, 344 So.2d 580, 584 (Fla. 1st DCA 1977). Except when an agency acts by formal rulemaking (Section 120.54) or by declaratory statement concerning the applicability of a statute, rule or order (Section 120.565), all agency action, on appropriate challenge, will mature into an order impressed with characteristics of the APA's Section 120.57.
A party whose substantial interests are or will be affected by agency action is entitled to a Section 120.57 hearing. If there is a "disputed issue of material fact," the agency must provide a trial type hearing upon request "[u]nless waived by all parties."
McDonald v. Department of Banking & Fin., 346 So.2d 569, 577-78 (Fla. 1st DCA 1977).
DER moreover appears to have lost sight of one of the principal objectives of APA processes: to expose policy errors in an agency's free-form routine and to subject agency heads "to the sobering realization [that] their policies [may] lack convincing wisdom." McDonald, Id. at 583. Perhaps most importantly, however, DER's argument overlooks the central purpose of the act, designed to provide
basic fairness which should surround all governmental activity, such as the opportunity for adequate and full notice of agency activities, the right to present viewpoints and to challenge the view of others, the right to develop a record which is capable of court review, the right to locate precedent and have it applied, and the right to know the factual bases and policy reasons for agency action... .
3 A. England, Jr., & L. Levinson, Florida Administrative Practice Manual, "Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, March 9, 1974," at 5 (1979).
Although DER's interpretation of the statutory exemption as self-executing, requiring no further agency action, might conceivably be appropriate if the agency were confronted with a situation in which a landowner merely applied to it for a letter of exemption,[3] the case before us is factually distinguishable in that DER first issued a warning notice to the landowner. This was done after Sergeant Allen executed his complaint affidavit and after DER had performed an on-site investigation. As such, the facts before us do not involve merely the issuance of a letter of exemption, but pertain as well to a dismissal of a violation proceeding commenced by DER. In that context, DER's letter of February 27 to Fischer clearly constitutes final agency action in the violation proceeding.[4] See, for example, Orange County v. Debra, Inc., 451 So.2d 868 (Fla. 1st DCA 1983), where an agency's acknowledgment of the withdrawal of a petition for a rule establishing a community development district constituted appealable final agency action.
The department's argument that it lacked jurisdiction to consider Friends' petition for a hearing once it decided that an agricultural exemption was applicable is similarly unconvincing because if a factual dispute exists on the issue of whether an agency has jurisdiction to proceed on a matter, it is error to deny the parties involved the opportunity to present evidence on that issue. See, for example, Town of Palm Beach v. Department of Natural Resources, 577 So.2d 1383 (Fla. 4th DCA 1991). In that case, the Department of *272 Natural Resources (DNR) determined that a permit was not required for a landowner to conduct certain landscaping activities on land within DNR's coastal construction jurisdiction. Appellants, the Town of Palm Beach and others who opposed the proposed activities, petitioned for a formal administrative hearing under section 120.57, which DNR denied on the grounds that appellants lacked standing and that the agency lacked jurisdiction over the proposed activities. In reversing, the Fourth District Court of Appeal pointed out that the process of determining whether the proposed trimming activities required a permit was based upon a factual finding that the activities would not have a material effect on the coastal system. Id. 577 So.2d at 1384. Thus, DNR had implicitly found a jurisdictional fact without giving the appellants, who had standing, the benefit of a section 120.57 hearing.
Like Town of Palm Beach, a factual dispute exists at bar as to whether the agricultural exemption applies to the access road.[5] DER should not be able to decide that issue without giving appellant a full opportunity to present evidence thereon. See also Burleson v. Department of Admin., Div. of Personnel, 410 So.2d 581 (Fla. 1st DCA 1982).
Manasota-88, Inc. v. Gardinier, Inc., 481 So.2d 948 (Fla. 1st DCA 1986), also supports the conclusion that the DER's actions here constitute final agency action. In Manasota-88, Gardinier applied for a groundwater permit to construct a phosphogypsum disposal field. During the application process, DER requested additional information concerning possible air pollution caused by airborne radioactive emissions from the waste pile that would be created. Gardinier responded by submitting information. Manasota-88, an environmental group, also submitted information which tended to show that Gardinier would require an air pollution permit as well as a groundwater permit. When DER informally advised both Gardinier and Manasota-88 of its intent to issue the groundwater permit, without requiring an air pollution permit, Manasota-88 requested a formal administrative hearing. DER denied its request on the ground that its decision not to require the air pollution permit was not agency action. This court reversed, concluding that the action regarding the air pollution permit was agency action within the meaning of section 120.52(2). The department, with Gardinier's acquiescence and cooperation, created an air pollution issue. It then made an affirmative decision, which it communicated to Manasota-88. As such, DER's actions constituted agency action. Id. at 950.
The agency here attempts to distinguish Manasota-88 on the ground that, unlike the present case, no exemption was involved there. This is a distinction without a difference. DER initiated the air pollution permit investigation in Manasota-88, just as it initiated the dredge and fill violation process here by issuing the warning notice. In both Manasota-88 and the case at bar, DER exercised its discretion by determining that no permits were required. The exercise of such discretion constituted final agency action. As no contention has been raised that Friends lacks standing as a substantially interested party to contest DER's decision that the property in question qualified for the agricultural exemption, we conclude that DER's reason for denying Friends an administrative hearing on the ground that its decision was not final agency action was in error and the dismissal must therefore be reversed.
Appellees finally contend that Friends is not entitled to a formal administrative hearing, because an adequate judicial remedy otherwise exists for Friends under Section 403.412(2)(a)1, Florida Statutes (1989). That statute provides:
(2)(a) The Department of Legal Affairs, any political subdivision or municipality *273 of the state, or a citizen of the state may maintain an action for injunctive relief against:
1. Any governmental agency or authority charged by law with the duty of enforcing laws, rules, and regulations for the protection of the air, water, and other natural resources of the state to compel such governmental authority to enforce such laws, rules, and regulations... .
Section 403.412 was intended to make enforcement of environmental laws and to make restraint of violations thereof a responsibility of both the government and the citizenry. Orange County Audubon Soc'y, Inc. v. Hold, 276 So.2d 542 (Fla. 4th DCA 1973). Through that statute the third party may institute a suit for injunctive relief against a governmental agency to compel it to enforce the laws relating to protection of natural resources. Friends of the Everglades, Inc. v. Board of County Comm'rs of Monroe County, 456 So.2d 904, 914 (Fla. 1st DCA 1984), review denied, 488 So.2d 830 (Fla. 1986).
Certainly appellant could submit information to enable DER to investigate whether the driveway actually qualified for the exemption. If DER declined to agree with appellant, appellant could then commence a suit pursuant to section 403.412 to compel DER to enforce its laws. The fact, however, that two forms of relief may be available to an affected party, i.e., a section 120.57 hearing or a section 403.412 enforcement proceeding, does not foreclose appellant from using either avenue. Alachua County v. Florida Dep't of Hwy. Safety & Motor Vehicles, 417 So.2d 1073 (Fla. 1st DCA 1982) (case remanded on the issue of entitlement to section 120.57 hearing even though another potential remedy was available via the comptroller's office).
REVERSED and REMANDED with directions to grant appellant's petition for a formal 120.57 hearing.[6]
JOANOS and MINER, JJ., concur.
NOTES
[1] Section 403.161(1)(b) provides that it is a violation of chapter 403 for any person to fail to obtain any permit required by the chapter.
[2] Section 403.927(2) provides as follows:

Agricultural activities and agricultural water management systems are authorized by this section and are not subject to the provisions of s. 403.087 or ss. 403.91-403.929, nor shall be department enforce water quality standards within an agricultural water management system. The department may require a stormwater permit or appropriate discharge permit at the ultimate point of discharge from an agricultural water management system or a group of connected agricultural water management systems. Impacts of agricultural activities and agricultural water management systems on groundwater quality shall be regulated by water management districts.
The term "agricultural activities" is defined under section 403.927(4)(a) as including:
All necessary farming and forestry operations which are normal and customary for the area, such as site preparation, clearing, fencing, contouring to prevent soil erosion, soil preparation, plowing, planting, harvesting, construction of access roads, and placement of bridges and culverts, provided such operations do not impede or divert the flow of surface waters.
(Emphasis added.)
[3] Because this is not a factual issue before us, it is one which we do not expressly decide.
[4] For an analogous conclusion, see Phibro Resources Corp. v. Department of Environmental Regulation, 579 So.2d 118 (Fla. 1st DCA 1991), reh'g denied, No. 90-50 (Fla. 1st DCA May 8, 1991). There, DER issued warning notices to Mobil, Conserv, and Phibro concerning groundwater contamination. DER subsequently entered into consent orders with only Mobil and Conserv and denied Phibro's request for a hearing in connection with those consent orders. This court found that the issuance of the warning notices made Conserv a party to the action, and that Phibro was entitled to a section 120.57 hearing.
[5] Section 403.927(4)(a) itself, describing agricultural activities which apply for the exemption, requires that the activities be "necessary" and "normal and customary"; obviously, if DER had jurisdiction to determine that the exemption should apply, a complete resolution of the issue required as well a determination that the activities in question met the statutory requirements.
[6] We glean from the department's reliance on certain administrative orders issued by it, i.e., Saltiel, Downing, and Fowler, that the agency considers it lacks the resources to consider, pursuant to the provisions of section 120.57, every challenge to its decisions exempting particular activities from the dredge and fill permitting requirements. Although this may be an appropriate reason for the department to seek a legislative exemption from APA processes, see Section 120.63, Florida Statutes (1989), it is not one which the judiciary may adopt in the absence of express legislative enactment.