595 So.2d 186 (1992)
FRIENDS OF THE EVERGLADES, INC., Appellant,
v.
BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND and Department of Natural Resources, Appellees.
No. 91-1100.
District Court of Appeal of Florida, First District.
February 25, 1992.
*187 David G. Guest of the Sierra Club Legal Defense Fund, Tallahassee, for appellant.
Kenneth J. Plante, General Counsel, Debra W. Schiro, Asst. General Counsel, Dept. of Natural Resources, Tallahassee, for appellees.
WOLF, Judge.
Friends of the Everglades, Inc. (FOE) appeals a final order of the Governor and Cabinet, sitting as the Board of Trustees of the Internal Improvement Trust Fund (board of trustees) and the Department of Natural Resources (DNR), which dismissed FOE's petition for a hearing pursuant to section 120.57, Florida Statutes. The dismissal was based upon FOE's lack of standing. FOE asserts that (1) appellees waived the standing defense by failing to raise it in a timely manner, and (2) FOE has standing to obtain an administrative hearing. We find that Friends alleged sufficient facts to demonstrate standing, it is, therefore, unnecessary for us to discuss the issue of waiver.
In 1987, DNR acquired a seven-acre site known as the North Key Largo Hammocks Site pursuant to section 253.023, Florida Statutes, the Conservation and Recreation Lands statute (CARL). The trustees initially leased the hammocks site to the DNR division of recreation and parks for use as a botanical site. The trustees later decided to lease a portion of the site to the Department *188 of Health and Rehabilitative Services for use as a juvenile detention facility.[1]
The appellant filed a timely petition and an amended petition, seeking a formal administrative hearing, challenging the decision of the trustees to utilize portions of certain lands purchased under the CARL program as a juvenile facility. The amended petition alleged that the conversion of the hammocks site to a juvenile jail was contrary to the statutory requirements of the CARL program which provides that land purchased pursuant to the program be utilized for "public recreation and conservation."
The trustees moved to dismiss the petition for want of sufficient standing. Appellees argued that the petition should be denied because the appellant (FOE) had failed to demonstrate how its interest would be adversely affected by the execution of the sublease. A response in opposition was filed by the petitioner, stating that the standing issue had been waived by failure to file a motion to dismiss within the time limit. The hearing officer issued a recommended order of dismissal based on lack of standing, but did not address the issue of waiver.
The Governor and Cabinet upheld the decision of the hearing officer.
The amended petition in pertinent part alleged that
[t]he Petitioner, Friends of the Everglades (FOE) is a non-profit environmental organization whose members live near and use the subject area for recreation and educational purposes. The FOE is committed to the preservation and conservation of environmentally endangered lands in the Everglades and South Florida area. FOE strongly supported legislation creating the Conservation and Recreational lands (CARL) program, under which the state buys or otherwise acquires rights to environmentally significant lands. FOE worked to identify suitable sites in South Florida and lobbied for their acquisition. FOE directed considerable effort and resources towards acquisition of the North Key Largo Hammocks site (also known as the New Mahogany Hammocks site) which is the subject of this petition. FOE expended funds to have a video of the Hammocks professionally produced and members of FOE travelled to Tallahassee to endorse the acquisition of the North Key Largo site. Despite well-placed opposition, the site was purchased with CARL funds as an "environmentally endangered land" (EEL). Because of FOE's expenditure of considerable resources to protect the site, FOE will be substantially affected by the state lease to HRS to use the site for purposes which are incompatible with public recreation and conservation.
Standing under the Administrative Procedure Act (APA) is conferred on persons whose substantial interest will be affected by proposed agency action. Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2nd DCA 1981), rev. denied, 415 So.2d 1359 (Fla. 1982), and 415 So.2d 1361 (Fla. 1982). To meet the requirements of standing under the APA, an association must demonstrate that a substantial number of its members would have standing. See Florida Home Builders Ass'n v. Department of Labor, 412 So.2d 351 (Fla. 1982).
A party seeking to show a substantial injury must demonstrate
1) that he will suffer an injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of the type or nature which the proceeding is designed to protect.
Agrico, supra at 482. Florida Society of Opthalmology v. State Bd. of Optometry, 532 So.2d 1279 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1333 (Fla. 1989).
*189 To properly apply the Agrico test, we must analyze both the type and nature of the injury asserted, and the purpose and scope of the administrative proceeding. The alleged substantial interest of the petitioner involves (1) the use of the subject property by its members who live near the property, and (2) the financial and other efforts of its membership to lobby the Cabinet to acquire the site in question. The purpose and scope of the administrative proceeding was to determine whether the use of the land which was proposed by the Governor and Cabinet would be inconsistent with the statutory purpose for the use of lands as contemplated by the CARL program under section 253.023, Florida Statutes (1989).
It cannot be seriously argued that voluntary lobbying efforts of the FOE (while they may be commendable) establish an interest which is designed to be protected pursuant to chapter 253, Florida Statutes. See Agrico, supra. We, therefore, reject that position without further comment. We must, instead, focus on the question of whether the use of the property by FOE members who live nearby is within the zone of interests to be protected by the CARL program.
Appellees assert that in order for FOE to establish standing, the mere use of the property by its membership is insufficient. They assert that to establish standing, the petitioner must demonstrate special injury. The cases cited by appellees for this proposition, however, do not apply to the administrative proceeding below: Cases involving enforcement of a public easement over private property are challenges to local zoning, and enforcement decisions are not covered by the Administrative Procedure Act. U.S. Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla. 1974); Renard v. Dade County, 261 So.2d 832 (Fla. 1972). In those cases, the test for standing which was established by common law is "special injury." Standing under chapter 120, Florida Statutes (1989), is established by statute. See Agrico, supra. One of the major purposes of the APA is "[E]xpansion of public access to the activities of governmental agencies." Florida Home Builders Ass'n, supra at 352, 353. We decline to apply the "special injury" analysis to determinations regarding standing under the APA.
Appellees also assert that ownership of land near or adjacent to a proposed project is a prerequisite to establishing "substantial injury." In Re: Surface Water Management Permit No. 50-01420, 515 So.2d 1288 (Fla. 4th DCA 1987), rev. denied, 525 So.2d 876 (Fla. 1988), and 525 So.2d 881 (Fla. 1988); Town of Palm Beach v. Department of Natural Resources, 577 So.2d 1383 (Fla. 4th DCA 1991). While property ownership in a particular location may be a factor in establishing substantial injury in certain types of proceedings, it is not necessarily a factor in all proceedings. The nature of the injury which is required to demonstrate standing will be determined by the statute which defines the scope or nature of the proceeding. See Agrico, supra; Town of Palm Beach, supra.
In Town of Palm Beach, supra, the Fourth District Court of Appeal distinguished that case from the standing determinations made in Grove Isle Ltd. v. Bayshore Homeowners Ass'n, Inc., 418 So.2d 1046 (Fla. 1st DCA 1982), rev. denied, 430 So.2d 451 (Fla. 1983), and Suwannee River Area Council Boy Scouts of America v. Department of Community Affairs, 384 So.2d 1369 (Fla. 1st DCA 1980), based upon the issues which were to be decided in the administrative proceeding. We feel that these cases and the case of Greene v. Department of Natural resources, 414 So.2d 251 (Fla. 1st DCA 1982), may be distinguished from the instant case in a similar fashion.
In Grove Isle, supra, the sole issue to be determined was whether to require a lease and to charge a fee for the use of state submerged lands as a marina. In Suwannee River, supra (a development of regional impact proceeding), a determination of the regional impacts of a proposed development was at issue. In both Grove Isle and Suwannee River, the proceedings involved determinations which were unrelated to the interests of the parties seeking to assert *190 standing. The courts found in both cases that there were state or local proceedings which could more appropriately deal with the concerns of the petitioners. In Greene, supra, the dispute involved which property should be purchased with limited state funds pursuant to the CARL program, a decision involving the discretionary expenditure of funds for the general public good.
In the instant case, the property in question has already been purchased pursuant to the CARL program. The allegations are that FOE's members are presently using the property in a manner which is consistent with the purposes and intent of section 253.023, Florida Statutes. The nature of the proposed proceeding is to determine whether the use of the property as a juvenile facility will comply with section 253.023, Florida Statutes, or preclude use by the public for the purposes enumerated in section 253.023, Florida Statutes. The interests alleged by the FOE are within the "zone of interests" protected by the CARL statute.
The allegations of the petition are that utilization of the land as a juvenile facility will immediately preclude use of the facility as a recreation area, as well as cause environmental damage to the proposed site. We, therefore, find that FOE has alleged sufficient facts, if determined to be true, to constitute injury of the type which the CARL statute is designed to protect.
We, therefore, reverse the order of dismissal, and remand to the agency for a formal administrative hearing pursuant to section 120.57, Florida Statutes (1989).
ERVIN and WIGGINTON, JJ., concur.
NOTES
[1] This project was a sublease to the HRS for the Crossroads Wilderness Institute Program. These programs are provided by HRS in an effort to offer alternative placements for delinquent youth and to develop innovative programs with wilderness and environmental themes. The HRS proposes to use the existing 18,000 square foot barracks at the North Key Largo site for housing the youth and staff, for storage, and for education classes.