636 So.2d 723 (1994)
SINGER ISLAND CIVIC ASSOCIATION, INC., and Eastpointe Condominium Association I, Inc., Appellants,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. 92-0135.
District Court of Appeal of Florida, Fourth District.
March 16, 1994.
Terrell K. Arline, Terrell K. Arline, P.A., Palm Beach Gardens, for appellants.
Patricia E. Comer, Asst. Gen. Counsel, Tallahassee, for appellee.
GLICKSTEIN, Judge.
The instant case is a companion case to Eastpointe Condominium Ass'n I v. Palm Beach Isles Assoc., 636 So.2d 721 (Fla. 4th DCA 1993), which this court per curiam affirmed. Our affirmance herein is occasioned by this panel's being bound by the panel's decision in the companion case, wherein the writer dissented. While the cases share a common issue, there is a procedural distinction which does not affect the merits.[1]Eastpointe involved an appeal of the final judgment, which the trial court entered on November 19, 1991, on the basis of a joint motion for entry of consent final judgment by the Trustees of the Internal Improvement Fund of the State of Florida (the Trustees), DER, and Palm Beach Isles Associates (PBIA). The instant case involves the denial of administrative review of the stipulation  not signed by Eastpointe because it was an intervenor  upon which the consent final judgment in Eastpointe was based. Appellants in the instant case are Singer Island Civic Association, Inc. (SICA), and Eastpointe *724 Condominium Association I, Inc. (Eastpointe), the latter being the appellant in Eastpointe.
In the stipulation, the Trustees, DER, and PBIA (with Eastpointe noticeably absent) concluded that the deed, through which PBIA derived title to a tract of land consisting of approximately 50.7 acres of submerged lands in Lake Worth, adjacent to Singer Island along AIA, was valid; that this deed conferred the right to bulkhead and fill subject only to section 1290, General Statutes of 1906, now codified as section 309.01, Florida Statutes (1989); that PBIA needed no fill permit or further authorization from DER, the Trustees or the Department of Natural Resources (DNR) to bulkhead and fill; and that DER, the Trustees, and DNR would not interfere with PBIA's attempts to procure from the Corps of Engineers a permit to dredge and fill.
The background of the property, briefly discussed in Eastpointe, is as follows: the Trustees sold the land at issue on April 22, 1924, as part of the 311 acres sold to Lake Worth Realty Company with the mutual understanding that the purchaser, or its successors, would fill the land. On July 26, 1957, two individuals obtained a permit from the Corps of Engineers to fill and bulkhead certain submerged lands, presumably including the 50.7 acres involved in the instant appeal. The permit was void if work was not completed on or before December 31, 1960. The permit was extended on December 15, 1960, until December 31, 1963. No work was ever done.
On November 18, 1988, PBIA applied to DER for a permit and a water quality certification to fill 50.7 acres for a residential development. DER waived the water quality certification requirement but denied the requested dredge and fill permit. DER's reasons for denial included the elimination of healthy and productive estuarine wetland and submerged habitat in Lake Worth, and the project's being contrary to the public interest. The notice of permit denial noted that the applicant's deed from the Trustees might confer an independent right to fill the property. PBIA did not seek administrative review or appeal the decision denying its permit request; it filed a declaratory judgment action in the circuit court pursuant to sections 253.763, 403.90 and 86.021, Florida Statutes (1991), alleging that the 1917 deed did grant it the right to fill and that the denial of the permit was a taking.
On October 9, 1991, PBIA, DER and the Trustees filed the stipulation in the trial court and the trial court entered the final consent judgment on November 18, 1991, which judgment this court per curiam affirmed. On November 7, 1991, SICA and Eastpointe filed a petition with DER for a formal administrative hearing pursuant to section 120.57, Florida Statutes (1989), in which they requested that the hearing officer reverse the stipulation. The petition alleged that SICA and Eastpointe first learned of the stipulation on October 25, 1991, and that the stipulation reversed prior agency action to deny the permit to PBIA, which reversal constituted final agency action.
On December 10, 1991, DER entered a final order in which it denied the petition for administrative review. It held that the Administrative Procedure Act did not contemplate review of judicial settlement agreements and that the matter was not final agency action. Appellants appeal this final order to this court.
The crux of the issue on appeal is whether the stipulation constitutes agency action. Section 120.52(2), Florida Statutes (1991), provides as follows:
"Agency action" means the whole or part of a rule or order, or the equivalent, or the denial of a petition to adopt a rule or issue an order. The term also includes any denial of a request made under s. 120.54(5).
Appellants give two reasons why the stipulation constitutes agency action as defined above. The first is that the stipulation creates a new exemption to DER's dredge and fill jurisdiction under chapter 403. The conclusion that a property owner holding a deed adopted pursuant to chapter 7304, Laws of Florida (1917), does not need a permit to fill and bulkhead submerged lands creates an exemption not found in chapter 403 or the rules adopted thereunder by DER. The second is that the stipulation reversed a prior *725 decision denying PBIA a permit. Appellants appropriately rely on Town of Palm Beach v. State Dep't of Natural Resources, 577 So.2d 1383 (Fla. 4th DCA 1991), Friends of the Hatchineha, Inc. v. State Dep't of Envtl. Regulation, 580 So.2d 267 (Fla. 1st DCA 1991), and Manasota-88, Inc. v. Gardinier, Inc., 481 So.2d 948 (Fla. 1st DCA 1986), as support. But for the decision in Eastpointe, because we agree that these cases provide support for appellants' position, we would hold that application of the reasoning in these cases to the instant case leads to a conclusion that entering into the stipulation constituted final agency action.
The first district pointed to the central purpose of the Administrative Act, designed to provide:
[B]asic fairness which should surround all governmental activity, such as the opportunity for adequate and full notice of agency activities, the right to present viewpoints and to challenge the view of others, the right to develop a record which is capable of court review, the right to locate precedent and have it applied, and the right to know the factual bases and policy reasons for agency action.
Friends, 580 So.2d at 271 (citation omitted).
Appellee DER responds essentially that a stipulation is in and of itself no effect until an order implementing it is entered and hence it is not agency action of the nature intended to provide administrative proceedings, specifically review pursuant to section 120.57, Florida Statutes. Appellee states that the final action taken in the instant case was judicial and hence an attempt to initiate additional administrative hearings is improper, citing Lloyd Citrus Trucking, Inc. v. State Dep't of Agriculture & Consumer Serv., 572 So.2d 977 (Fla. 4th DCA 1990). We think this case inapposite as support for DER because no statutory provision provides for such clear mutually exclusive remedies in the instant case.
DER claims it did not make the determination exempting PBIA from permitting requirements under chapter 403, Florida Statutes. Rather it asserts that it was a party defendant in court litigation involving claimed rights under the deed and that its signing of the stipulation represented only its acquiescence in the claims of PBIA, the party plaintiff. Furthermore, DER attempts to distinguish the cases upon which appellants rely, Town of Palm Beach, Friends, and Manasota-88, on the basis that they involved determinations by an administrative agency acting in an administrative capacity concerning factual matters within the agency's authority, while the instant case involves a circuit court litigation concerning matters not within the agency's authority to decide. We perceive there to be inherent problems in agreeing with DER's position.
In Eastpointe there was no trial and there was no fact finding by the trial court. The final judgment was entered based on joint motion for entry of final consent judgment. DER merely signed a stipulation in litigation, its consent to the final judgment in Eastpointe caused the trial court to enter the final judgment and also allowed DER to avoid responsibility for the end result, passing such on to the trial court. Thus, the stipulation exempted PBIA from environmental regulations without DER having to take responsibility for making this exemption and bypassing review under section 120.57, Florida Statutes, altogether, particularly in light of the fact that the stipulation reversed DER's original agency action, which was to deny PBIA a fill and dredge permit.
Because the stipulation reversed the prior denial, which was agency action, without affording affected parties an opportunity to present their viewpoint, but for our decision in Eastpointe, we would reverse and remand for a formal administrative hearing.
Given the issue involved and the split decision in Eastpointe and here, we certify the following question of great public importance:
IS THE STIPULATION EXECUTED HEREIN BY DER AN INVALID BYPASS OF REVIEW REQUIRED BY SECTION 120.57, FLORIDA STATUTES?
So that appellants do not fruitlessly labor here further, in light of Eastpointe, we will not entertain any motion for rehearing.
*726 ANSTEAD, J., concurs.
DELL, C.J., concurs in part and dissents in part with opinion.
DELL, Chief Judge, specially concurring and dissenting in part.
I concur with the result reached by the majority and with the certified question. I disagree with the majority's decision not to entertain any motion for rehearing.
NOTES
[1] The instant appeal was stayed and held in abeyance until the outcome of Eastpointe, as that case was the first of the two heard here upon the merits.