855 So.2d 278 (2003)
GLA AND ASSOCIATES, INC., a Florida corporation and Athena Condominium Association, Inc., a Florida not-for-profit company, Appellants,
v.
The CITY OF BOCA RATON, Appellee.
No. 4D02-1051.
District Court of Appeal of Florida, Fourth District.
October 8, 2003.
Rehearing Denied October 8, 2003.
*279 Robert A. Sweetapple and Alex Varkas of Sweetapple, Broeker & Varkas, Boca Raton, for appellant.
Jamie Alan Cole and Matthew H. Mandel of Weiss Serota Helfman Pastoriza & Guedes, P.A., Fort Lauderdale, and Diana Grub Frieser, Boca Raton, for appellee The City of Boca Raton.
Teri L. Donaldson, Betsy Hewitt and Charles T. Collette, Tallahassee, for Amicus Curiae Florida Department of Environmental Protection.

ON MOTION FOR REHEARING
WARNER, J.
We deny the motions for rehearing, withdraw our previously issued opinion and substitute the following in its place.
*280 GLA and Associates, Inc. ("GLA"), a residential developer of condominiums, challenges the trial court's order entering summary judgment in favor of the City of Boca Raton ("the City") and holding constitutional a city ordinance that requires a city permit for activities conducted seaward of the established coastal construction control line. The court held that GLA was collaterally estopped because GLA's predecessor in title previously litigated the same issue, and the court found in favor of the City. It also determined that the city ordinance is not preempted by Chapter 161 of the Florida Statutes, and that the ordinance is not unconstitutional for lacking adequate criteria to be considered upon an application for a variance. We agree and affirm.
GLA is the developer of a residential condominium on beachfront property owned by Athena Condominium Association, Inc. in Boca Raton. In January of 1999, GLA applied to the Department of Environmental Protection of the State of Florida ("DEP") for a permit to rehabilitate a beach dune, to conduct general landscaping activities, and to build a concrete walkway and wooden dune walkover structure, all seaward of the state coastal control line ("CCL"). The "rehabilitation" of the dune sought to lower the dune along GLA's property by three feet. After review, the DEP approved the permit, finding "no significant adverse impacts to the beach/dune areas or to adjacent properties." A condition of the permit required GLA to "obtain any applicable license or permits which may be required by federal, state, county, or municipal law." (Emphasis added).
Without obtaining a permit from the city, GLA commenced its activities on the dune, including the removal of exotic vegetation. As it began to contour the dune to the lower permitted elevations, the City cited GLA for violating specific provisions of the City's ordinances. City ordinance section 28-1556(3) provides in pertinent part: "[N]o person shall construct any structure whatsoever seaward of the county coastal construction control line as established by the department of natural resources ... [or] make any excavation, remove any beach materials or otherwise alter existing ground elevations seaward thereof." The ordinance defines "excavation" as the "removal of soil, sand or vegetation by the process of digging, scooping or hollowing out." Boca Raton, Fla., Code of Ordinances § 28-1556(2)(1999). In addition, a "structure" includes "anything constructed or erected, the use of which requires a fixed location on the ground." Id. A dune walkover would qualify as a structure.
To comply with the City's ordinances, GLA submitted an application for approval of its dune rehabilitation work, without waiving its right to challenge the ordinance. Although the City's staff approved the native species landscaping plan, the City Council eventually denied approval because of the reduction of the dune elevation. Based upon the City's denial of approval, the DEP revoked GLA's state permit.
GLA filed suit claiming the City ordinance was preempted by state law, specifically the Beach and Shore Preservation Act ("the Act"), Chapter 161, Florida Statutes. The Act provides that once the CCL is established, as it was in this case, "no person ... shall ... make any excavation, remove any beach material, or otherwise alter existing ground elevations" except in compliance with the statute. § 161.053(2)(a), Fla. Stat. (2000). For any such work on a dune, a permit issued by the DEP is required. See § 161.053(5). GLA maintained that the City's ordinance, which requires a permit to perform excavation, *281 is impliedly preempted by the Act, which provides in part, "Any ... coastal municipality may establish coastal construction zoning and building codes in lieu of the provisions of this section, provided such zones and codes are approved by the department as being adequate to preserve and protect the beaches and coastal barrier dunes adjacent to such beaches...." § 161.053(4). That section also permits local administration of established CCLs "where desired by local interests and where such local interests have, in the judgment of the department, sufficient funds and personnel to adequately administer the program." Id. (emphasis added). GLA argued that because the DEP never approved the City's ordinance or "certified" the City's competence to permit coastal work, only the state provisions should apply. GLA also alleged that although the ordinance provided for the ability to obtain variances from its terms, it included no standards to guide the City in granting variances to the setback.
In answering GLA's complaint, the City contended both that its ordinance was not preempted and that GLA's suit was barred by collateral estoppel. GLA's predecessor in title, Booties, Inc. ("Booties"), brought an action against the City in 1996 seeking a declaratory judgment that Chapter 161 preempted the City from exercising its jurisdiction pursuant to Ordinance section 28-1556 over the permitting of structures seaward of the state's CCL. In the earlier litigation, Booties' application for the construction of a swimming pool seaward of the CCL was denied by the City. In that case, the court ruled that the ordinance did not violate the requirements of state law, nor did state law preempt the city from regulating construction seaward of the CCL because a conflict did not exist between the ordinance and state law.
The trial court entered summary final judgment against GLA after determining GLA was collaterally estopped from litigating the preemption and inconsistency arguments already decided in the Booties litigation. The court further determined that Chapter 161 did not preempt the City from regulating seaward of the CCL because the Act and the ordinance are not inconsistent. Finally, it found that Chapter 28 of the City Code provided sufficient criteria for the consideration of variance applications requested under section 28-1556 to pass constitutional muster. From this judgment, GLA appeals.
We first agree that the Booties litigation collaterally estopped GLA from raising its preemption and inconsistency claims. In its reply brief, GLA concedes that the Booties litigation "was exactly the same except that Booties was predicated on a different permit and was never appealed." These distinctions are meaningless where GLA admits that both cases tested the facial validity of the ordinance. With no real explanation, GLA simply suggests that this court need only give the prior litigation "appropriate regard" as opposed to preclusive effect.
The doctrine of collateral estoppel,
[P]revents identical parties from relitigating the same issues that have already been decided. The essential elements of the doctrine are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction.
Dep't of Health & Rehab. Servs. v. B.J.M., 656 So.2d 906, 910 (Fla.1995) (citing Mobil Oil Corp. v. Shevin, 354 So.2d 372, 374 (Fla.1977)). Here, Booties, GLA's immediate predecessor in title raised the same claims regarding the City's authority to *282 regulate activities seaward of the dune. Although Booties sought to build a swimming pool and GLA sought to excavate the dune, each raised facial challenges to the ordinance itself. As GLA neither contests its privity with Booties nor contests the fact that identical issues were raised and decided in each suit, we conclude that the doctrine of collateral estoppel applies and precludes the relitigation of the issues raised in this suit.
Even if collateral estoppel does not apply, the Act does not preempt the city ordinance. GLA may argue only that the Act impliedly preempts the City ordinance, because there is no express preemption in the statutory language. "Implied preemption should be found to exist only in cases where the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 831 (Fla. 1st DCA 1996) (citing Tribune Co. v. Cannella, 458 So.2d 1075 (Fla.1984); Hillsborough County v. Fla. Rest. Ass'n, 603 So.2d 587 (Fla. 2d DCA 1992)). Additionally, "[t]he scope of the preemption should also be limited to the specific area where the Legislature has expressed their will to be the sole regulator." Id. (citing St. Johns County v. Northeast Fla. Builders Ass'n, 583 So.2d 635 (Fla.1991)) (determining "the existence of one funding mechanism by the Legislature does not preclude the county from adopting additional funding mechanisms"); Santa Rosa County v. Gulf Power Co., 635 So.2d 96 (Fla. 1st DCA 1994) (concluding "the existence of a pervasive scheme of regulation by the Legislature over an electric utility does not preclude the county from adopting a franchise fee for the use of county right-of-way").
GLA contends that such preemption is shown by section 161.053(4), which allows local regulation "in lieu of" the statute's provisions only where such local regulation has been approved by the DEP and where the local government has sufficient funds and expertise to preserve the dune and beaches. However, GLA overlooks section 161.053(5)(b) which provides for exceptions by which the DEP may permit structures seaward of the CCL. It states:
If in the immediate contiguous or adjacent area a number of existing structures have established a reasonably continuous and uniform construction line closer to the line of mean high water than the foregoing ... a proposed structure may, at the discretion of the department, be permitted along such line.... However, the department shall not contravene setback requirements or zoning or building codes established by a county or municipality which are equal to, or more strict than, those requirements provided herein.

(Emphasis added). As the DEP states in its amicus brief in support of the position that the City's ordinance is not preempted by the statute, "the Department has always interpreted the provisions of Chapter 161 in this manner, i.e., as allowing local setback ordinances such as Boca Raton's. Indeed, state law expressly requires deference to such local setback requirements. See § 161.053(5)(b)." We give considerable deference to the DEP's position, as it is the agency charged with the responsibility of enforcing these regulations. See Fla. Interexchange Carriers Ass'n v. Clark, 678 So.2d 1267, 1270 (Fla.1996); 1000 Friends of Fla., Inc. v. State Dep't of Cmty. Affairs, 824 So.2d 989, 991 (Fla. 4th DCA 2002). Here, the City's ordinance is more strict in that it prohibits excavation of the dune where the state would apparently permit it. Therefore, the statute *283 neither preempts the ordinance nor is in conflict with it.
Appellant cites to Town of Palm Beach v. State Department of Natural Resources, 577 So.2d 1383 (Fla. 4th DCA 1991), and Pace v. Board of Adjustment, Town of Jupiter Island, 492 So.2d 412 (Fla. 4th DCA 1986), as support for its position. Both cases are distinguishable. In Town of Palm Beach, the municipality was challenging the DEP's determination that it had no jurisdiction regarding the maintenance of vegetation seaward of the dune. We held that under the regulations, the DEP had authority to regulate such activity where it materially affected the dune. See 577 So.2d at 1386. The issue of whether municipal ordinances were preempted by the existence of such authority was not an issue in the case. In Pace we held that the "pervasive" authority of the state over the beaches and dune system as expressed in Chapter 161 did not prevent the municipality from regulating landward of the CCL. See 492 So.2d at 415. In fact, we noted that the statute contained a provision allowing local zoning codes involving setbacks from the shoreline which were more strict than the state regulations. See id. As that is the case here, Pace does not support GLA's position.
Finally, GLA contends that the ordinance does not contain any ascertainable standards or criteria to be followed in consideration of the variance applications. Ordinance 28-1556(4), which creates a procedure for obtaining a variance from the terms of the ordinance, does not contain the criteria to be followed when making a determination on an application for variance. Instead, these criteria are contained in City Code section 28-130(2). That section provides that the City may "grant variances from the requirements of this chapter "and includes the criteria to consider when deciding to grant variances from the zoning code. (Emphasis added). As the trial court found, because 28-1556 is part of the same chapter, the criteria included in 28-130 apply to variances sought under 28-1556(4).
For the foregoing reasons, we affirm the final summary judgment of the trial court.
FARMER, C.J., and STONE, J., concur.